In re THOMPSON.

FIRST NAT. BANK OF WOODBURY v. WEST.

(Circuit Court of Appeals, Third Circuit. November 29, 1915.)

No. 1964.

1. BANKRUPTCY ⟂328—TIME FOR PROVING CLAIMS—SECURED CREDITOR.

A secured creditor of a bankrupt, who retains his security and makes no claim against the estate during the year allowed for filing claims, will be deemed to have elected to rely on his security, and will not be permitted to file a claim thereafter.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 518; Dec. Dig. ⟂328.]

2. BANKRUPTCY ⟂336—PROOF OF CLAIM—AMENDMENT.

A letter written by a creditor of a bankrupt after the filing of the petition, but before adjudication, in answer to one received from the attorneys for the receiver, stating the amount and character of its claims against the bankrupt and describing the security held by it, *held* not to constitute an informal proof of claim against the estate, which could be amended after the lapse of three years.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 523, 524; Dec. Dig. ⟂336.]

Petition to Revise Order of the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

In the matter of William J. Thompson, bankrupt; Henry J. West, trustee. Petition by the First National Bank of Woodbury to revise an order denying its petition for leave to file a claim. Affirmed.

For opinion below, see 222 Fed. 167.

A. H. Swackhamer, of Woodbury, N. J., for petitioner.

Bleakly & Stockwell, of Camden, N. J., for respondent.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The question for decision is presented by the following facts:

An involuntary petition was filed against William J. Thompson on April 28, 1911, and on May 8 he was adjudged bankrupt. He was then in debt to the First National Bank of Woodbury, his debt including a note for $10,000, dated February 27, 1911, due June 27, which was secured by the pledge of certain securities. The pledge being within four months was apparently a preference, but the trustee did not attack it and allowed the bank to realize afterward on the collateral. The bank was scheduled among the creditors, and from time to time during the next three years received the notices to which it was entitled under the act. Act July 1, 1898, c. 541, 30 Stat. 544. The latest of these was dated in February, 1914, and announced the declaration of a dividend payable on demand to the creditors entitled thereto. The bank had not surrendered its securities under section 57 (g), and their value had not been determined under clause (h) of the same section (Comp. St. 1913, § 9641); but they had produced

$2,000 in one way or another more than a year after the adjudication. No proof of claim had been filed, but as $8,000 was still unpaid the bank petitioned the referee soon after hearing of the dividend, setting forth the debt and the balance still due, and averring that early in May, 1911, it had placed the claim in the hands of its attorney, and had directed him to prepare and file a proof and to take such other action as might be necessary. The petition averred also that the attorney had prepared and filed the proof, but that, owing to his death in September, 1911, no papers relating to the claim could be found after a thorough search. The referee was therefore asked to permit the bank "to re-establish its claim * * * and to share in the distribution of [the bankrupt's] estate." Evidence was taken, and the result is summarized in the following paragraph from the referee's opinion:

"At the hearing held to consider the petition the testimony adduced was considerably at variance with the facts set out in the petition. The petition stated that the cashier of the bank had made proof of claim upon a note given by the bankrupt to said bank and that the said claim was properly verified and filed with the referee, or with the trustee, and, further, that the cashier of the bank was present at the first meeting of the creditors and participated in the deliberations of the meeting. At the hearing the cashier testified that he had no recollection of having made any such proof of claim, and that he was not present at the first meeting of creditors and that he did not participate in the election of the trustee. This feature of the petition was accordingly abandoned. It was stated in the petition, and proven at the hearing, that the bank had received numerous notices of meetings of creditors, etc. Of course, as the bank was a scheduled creditor, there is no doubt but what there was mailed to it a copy of every notice which was sent to the creditors, as required by the terms of the Bankruptcy Act. There was no pretense at the hearing that any proof of claim was ever filed with the referee, and, in order to have this matter perfectly clear on the record, both sides agreed that the referee should make such a statement."

Having failed to establish its original position, the bank made what the referee properly refers to as a "complete change of base so far as the bank's claim under the petition was concerned." His opinion goes on to say:

"It developed that the bank received, under date of April 27, 1911, a letter from Bleakly & Stockwell, who therein stated that they were acting on behalf of Henry J. West, receiver in bankruptcy, and requested that the bank advise them at once as to the amount of the indebtedness of Mr. Thompson to the bank, and also the amount and character of the collateral held as security by the bank, etc. Under date of May 2, 1911, the cashier of the First National Bank of Woodbury replied to the letter of Bleakly & Stockwell of April 27, with the following letter:

"'Woodbury, N. J., May 2, 1911.

"'Bleakly & Stockwell, Attorneys for Henry J. West, Receiver in Bankruptcy, William J. Thompson—Dear Sirs: Your favor of April 27th has been received, and the contents carefully noted. We beg to report the indebtedness of William J. Thompson of Gloucester City, N. J., to this bank as follows:

"'$3,500. Note of Henry M. Harley, indorsed by William J. Thompson, due and protested on April 27th, 1911. Also holding note of H. M. Harley, deceased, for $4,500 that fell due on October 27th, 1910, with this. Note of William J. Thompson for $10,000, due June 27th, 1911, with 200 shares of the capital stock of the Gloucester Perry Company and $2,000 of bonds of Fries-Harley Co.

"'Yours very truly,                    J. F. Graham, Cashier.'

"It is now claimed on behalf of the bank that this letter must be accepted as a proof of claim, and that the bank must be accorded the privilege of amending the same to have it meet with the requirements of the Bankruptcy Law. On the other hand, the trustee claims that the provisions of section 57n of the Bankruptcy Act of 1898 have long since run against the claim of this bank, and that the petitioner is barred from proving its claim because more than one year has expired since the adjudication of Thompson as a bankrupt."

The trustee's objection was overruled, and the referee ordered that the bank "have leave to amend its said petition by filing the amendment hereto annexed, and further that the said petitioner have leave to amend its proof of claim to conform to the formal requirements of the Bankruptcy Act and general orders as aforesaid." This order was made on the theory that the bank's letter of May 2 was an informal claim made within the statutory period, which could therefore be amended after the year had expired. The District Court was of a different opinion (222 Fed. 167), and the dispute has been brought here by the pending petition.

[1, 2] The bank's letter of May 2 was written after the involuntary proceeding had been begun, but before the adjudication and while Thompson's property was in the hands of a temporary receiver. The letter was a reply to the following request for information from the attorneys for the receiver:

"April 27, 1911.

"First National Bank, Woodbury, N. J.—Gentlemen: In re William J. Thompson, Bankrupt.

"On behalf of Henry J. West, receiver in bankruptcy, we would request that you advise us at once as to the amount of the indebtedness of Mr. Thompson to your bank, and also the amount and character of the collateral which you hold as security with each note held by you. Kindly also state when each note falls due. It is necessary for us to make a report at once to the court as to the condition of his assets.

"Kindly also advise us as to the amount of his cash balance, if any, in your bank to the credit of his account.

"Very truly yours,                          Bleakly & Stockwell."

Much liberality has been shown by the courts in permitting imperfect claims and proofs of claim to be put into proper form after the statutory period has expired, but we are advised of no decision that runs counter to the positive language of the act and permits a claim that is wholly new to be presented after the limitation has run. In some form the substance of a claim must have been made within the proper time, but if this has been done amendments may be made afterward. Whether formal or informal, a claim must show (as the word itself implies) that a demand is made against the estate, and must show the creditor's intention to hold the estate liable. And this is especially the duty of a secured creditor, who has the choice (if his security be not also a preference) of relying upon the security and thereby giving up all or a part of his claim upon the estate. This he will be sure to do, if the security be sufficient to pay the whole debt; and, even if it will only pay the debt in part, he will probably apply the security as far as possible and hold the estate for the remainder only. But his election to pursue the estate must be made in accordance with the act; otherwise, he will be confined to his security.

In our opinion, the bank did not decide to make a claim on the

bankrupt estate until after February, 1914. Apparently it had been preferred, and if this were true it could not claim without surrendering the preference. At all events, it held on to its collateral, whose par value was larger than the whole debt (we do not know its actual value), and did not attempt to realize on the stock and bonds until more than a year had gone by. And it never made a claim against the estate in any form until nearly three years had passed. The letter of May 2 was a mere statement that the bank was a creditor of W. J. Thompson; no claim could then have been made against his bankrupt estate, for the estate had not yet come into being. At that time there was no adjudication, and none might ever be entered. The District Court had taken temporary custody of the property, and was seeking information that might help it to protect the interest of the creditors; but as yet there was no bankrupt, no estate, and no trustee, and the time for the proof of claims had not yet arrived. Apparently the bank was secured by its collateral, certainly it was. secured at least in part, and (so far as appears)·it did not then intend to relinquish its advantage in favor of the general estate. We do not think it necessary to prolong the discussion. In the cases cited for the bank—Re Roeber (C. C. A. 2d Cir.) 127 Fed. 122, 62 C. C. A. 122; Bennett v. American, etc., Co. (C. C. A. 6th Cir.) 159 Fed. 624, 86 C. C. A. 614; Re Kessler (C. C. A. 2d Cir.) 184 Fed. 51, 107 C. C. A. 13; Re Brewing Co. (C. C. A. 2d Cir.) 193 Fed. 989, 113 C. C. A. 626; Re Fairlamb (D. C.) 199 Fed. 278; Re McCarthy, etc., Co. (D. C.) 205 Fed. 986; Re Hamilton, etc., Co. (C. C. A. 6th Cir.) 209 Fed. 596, 126 C. C. A. 418—the creditor showed a plain intent to hold the debtor's estate liable, and this we think is the essence of the matter. Such an intent does not appear in the present case.

The order is affirmed.

