### In re CLAREMONT TOWERS COMPANY, Debtor.

### Bankruptcy No. 91–33122.

United States Bankruptcy Court, D. New Jersey.

Dec. 15, 1994.

Jack M. Zackin, Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A., Newark, NJ, for ICC Lincoln Ltd. Partnership.

Patricia S. Gardner, Wilentz, Goldman & Spitzer, Woodbridge, NJ, for debtor.

Beth Zindler, Ravin, Sarasohn, Cook, Baumgarten, Fische & Baime, Roseland, NJ, for Creditor's Committee.

Bruce Wisotsky, Ravin, Greenberg & Marks, Roseland, NJ, for Official Committee of Ltd. Partners.

### OPINION

WILLIAM H. GINDIN, Chief Judge.

### INTRODUCTION

The debtor brought this motion to estimate secured creditor ICC Lincoln Limited Partnership's ("ICC") claim at zero, to vacate ICC's 1111(b) election and to vacate and strike ICC's plan objection and voting ballot. ICC crossmoved seeking authorization to withdraw its 1111(b) election so that ICC may cast a ballot on its unsecured deficiency claim. This Court has jurisdiction pursuant to 28 U.S.C. § 1334. Since this is a motion involving claims, it is a "core" matter pursuant to 28 U.S.C. § 157(b)(2)(B).

### FACTS

At the time debtor filed its petition, the claim presently asserted by ICC was held by the Resolution Trust Company ("RTC"). RTC's claim was scheduled by Debtor as disputed. On July 5, 1991, the court served notice upon all creditors that the deadline for filing proofs of claim was to be October 3, 1991. RTC was properly served. RTC did not file a proof of claim before the deadline, but on October 27, 1992, RTC did purport to make an election under 11 U.S.C. § 1111(b)(2) by filing a notice of intention with the court.

By purchase agreement dated December 16, 1992 RTC assigned its mortgage on debtor's property to ICC as part of a package of other mortgages. On March 8, 1993, ICC filed a notice of assignment of RTC's claim with this court. It is clear that ICC knew that the debtor was in bankruptcy and that the RTC had failed to file a timely proof of claim. ICC paid RTC $3,3000,000 for the assignment of the mortgage. ICC now attempts to assert a claim for $7,687,000, the full amount due on the mortgage.

On May 7, 1993, ICC filed a ballot which rejected the debtor's plan and filed a plan objection. ICC subsequently filed a late proof of claim on July 26, 1993, nearly two years after the bar date of October 3, 1991 had passed. ICC did not, however, seek prior court approval for leave to file a late proof of claim for excusable neglect.

The debtor objects to the claim of the ICC on the grounds that ICC's proof of claim was not timely filed pursuant to Fed.R.Bankr.P. 3003(c)(2). The claim, then held by RTC was scheduled as disputed. Thus, RTC was required to file a timely proof of claim. Fed.R.Bankr.P. 3003(c)(2), (3); 11 U.S.C. §§ 501, 502, 1111(a). Debtor argues that because the RTC failed to file a timely proof of claim, ICC's unsecured claim must be estimated at zero. Debtor concedes that ICC has a valid pre-petition lien which will survive the bankruptcy proceeding.

ICC, as successor to RTC, makes three arguments in response to the debtor's contentions. First, the partnership argues that its lien is a valid allowed secured claim pursuant to *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Second, it contends that its predecessor, RTC, asserted an informal proof of claim thus satisfying the proof of claim requirement. ICC's third argument is that the debtor should be estopped from challenging ICC's claim because the debtor failed to challenge similar claims of other creditors.

### DISCUSSION

■ "An entity which acquires a claim steps into the shoes of that claimant, enjoying both the benefits and the limitations of the claim, as a successor in interest." *In re Holly Knoll Partnership*, 167 B.R. 381, 385 (Bankr.E.D.Pa.1994), (citing *In re Applegate Property, Ltd.*, 133 B.R. 827, 833 (Bankr.W.D.Texas 1991)). *See also Premier Dental Products Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 853 (3d Cir.1986); *Pension Fund—Mid Jersey Trucking Industry—Local 701 v. Omni Funding Group*, 731 F.Supp. 161, 170 (D.N.J.1990) (both holding that following a proper assignment, the assignee

steps into the shoes of the assignor). As assignee of the RTC position ICC suffers the consequences of RTC's failure to file a timely proof of claim. ICC was well aware of the status of the RTC claim when it purchased the $7,687,000 claim for $3,300,000. ICC cannot claim that equity should allow it to remedy the RTC's failure to file timely. Even if the equities were in favor of allowing the ICC a chance to cure the failure to file, ICC did not file its late proof of claim until seven months after it acquired the claim from the RTC. The ICC proof of claim must be treated as untimely filed.[1]

*Unsecured Claim*

██ A secured creditor need not file a proof of claim if it wishes to pursue its claim outside of a bankruptcy proceeding because the secured creditor maintains its prepetition lien against the property of the debtor even if the creditor fails to file a proof of claim. *In the Matter of Tarnow*, 749 F.2d 464, 465 (7th Cir.1984). The risk that the secured creditor runs is that the value of the collateral will decrease and the creditor will become undersecured. Once the value of the collateral falls below the amount of the lien, the claim must be bifurcated and the deficiency is classified as an unsecured claim. 11 U.S.C. § 506(a). *See In the Matter of Burrell*, 85 B.R. 799, 800–01 (N.D.Ill., E.D.1988); *Barash v. Public Finance Corp.*, 658 F.2d 504, 507 (7th Cir.1981).

██ "In order for the unsecured portion of the claim to be allowed, the undersecured creditor must file a proof of claim, at least as to that portion of its claim." *Burrell*, 85 B.R. at 801; Fed.R.Bankr.P. 3002(a); *In re American Skate Corp.*, 39 B.R. 953, 954 (Bankr.

D.N.H.1984). In the instant case, both ICC and the Debtor admit that the value of the collateral has fallen below the amount of the lien; thus the deficiency must be treated as an unsecured claim. 11 U.S.C. § 506(a). Filing of late claims should be discouraged by dismissal of the unsecured claim against the estate, as "distinct from the claim against the collateral itself." *Tarnow*, 749 F.2d 464, 466. Since neither ICC nor its predecessor, RTC, filed a timely a proof of claim, the unsecured portion of ICC's claim is not allowed. Fed.R.Bankr.P. 3002(a).

██ Debtor has requested that the court estimate ICC's unsecured claim at zero pursuant to 11 U.S.C. § 502(c). The plain meaning of this code section makes clear that this remedy is not applicable to the instant case.[2] First, the court is to estimate a claim under § 502(c) for the "purpose of allowance." 11 U.S.C. § 502(c). As Fed.R.Bankr.P. 3002(a) makes clear, ICC's unsecured claim is not an allowed claim, thus there is no purpose in estimating the amount of the claim.[3] Second, the claim is neither "contingent or unliquidated" nor is it a "right to payment arising from a right to an equitable remedy for breach of performance." 11 U.S.C. §§ 502(c)(1) and (2).

██ Debtor points to the second part of § 502(c)(1), the "delay [in] the administration of the case," to persuade the court that estimation is proper. This language, of course, is taken out of context as only contingent or unliquidated claims, "the fixing or liquidation of which would unduly delay the administration of the case," are proper claims to be estimated. The bankruptcy code provides the proper procedure to be followed in the instant case where the creditor is underse-

---

1. As mentioned above, ICC argues that its predecessor, RTC, filed an informal proof of claim and in the alternative that debtor is precluded by judicial estoppel from denying the validity of ICC's claim. The court finds no merit in either argument. *See infra* pp. 166–67.

2. 11 U.S.C. 502(c) provides as follows:

 (c) There shall be estimated for purpose of allowance under this section—
 (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case

may be, would unduly delay the administration of the case; or
 (2) any right to payment arising from a right to an equitable remedy for breach of performance.

3. Bankruptcy Rule 3002(a) provides:
 (a) *Necessity for filing.* An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004 and 3005.

cured and has failed to timely file a proof of claim. First, the claims are bifurcated pursuant to 11 U.S.C. § 506(a) and then any unsecured claim is disallowed pursuant to Fed.R.Bankr.P. 3002(a).

### Secured Claim

 Having failed to timely file a proof of claim on its secured claim, ICC cannot be treated as a secured creditor for purposes of voting and distribution. Fed.R.Bankr.P. 3002(c). ICC's lien, however, is not extinguished. *In re Fernwood Markets,* 76 B.R. 501, 503 (Bankr.E.D.Pa.1987); *Relihan v. Exchange Bank,* 69 B.R. 122, 125 (S.D.Ga. 1985). ICC can pursue its claim against the property once the stay is lifted or a plan is confirmed and it is permitted to do so under the terms of such plan. *Fernwood Markets,* 76 B.R. at 503; *Relihan,* 69 B.R. at 125.

ICC argues that the mortgage is a claim in the bankruptcy case even without a timely proof of claim having been filed. The Supreme Court has given a broad definition to the term "claim" as defined in 11 U.S.C. § 101(5) and has held that a mortgage is a "claim" in a bankruptcy case. *Johnson v. Home State Bank,* 501 U.S. at 83–84, 111 S.Ct. at 2153–54, 115 L.Ed.2d at 74–75. The question is, however, whether or not it is an "allowed claim" in this case giving the holder of the claim voting and distribution rights.

In the *Johnson* case, the Supreme Court found that while a creditor's *in personam* action against the debtor was discharged in Chapter 7, the *in rem* action survived. *Id.* Thus, when the creditor sought to foreclose on the mortgage after the Chapter 7 case and the debtor subsequently filed a Chapter 13 case, the mortgage survived the Chapter 7 case and was found to be a "claim" subject to inclusion in the Chapter 13 plan. *Id.*

 While it is clear from *Johnson* that the mortgage itself is a claim in a bankruptcy case even when there is no *in person-*

*am* action against the debtor, it does not follow from *Johnson* that the claim must be an allowed claim with rights of distribution and voting absent a filing of a proof of claim where the claim is listed as disputed by Debtor.

ICC argues that *Johnson* holds that the claim is an "allowed claim." ICC quotes the following language: "the Court must allow the claim if it is enforceable against either the defendant or his property." *Johnson,* 501 U.S. at 85, 111 S.Ct. at 2155, 115 L.Ed.2d at 75. The Court was discussing whether or not rights against the debtor were required for the mortgagee to have a claim in the bankruptcy case and what, if anything, survived the Chapter 7 liquidation. The Court found that even though the action against the debtor is extinguished in a Chapter 7, the lien against the property survives and may be a claim in the case absent the right to proceed against the debtor. *Id.*

The *Johnson* case is distinguishable from the instant case. The *Johnson* case was filed under Chapter 13. Therefore, Bankruptcy Rule 3003 which deprives a creditor of voting and distribution rights for failure to file a timely proof of claim did not apply.[4] As a result, the Supreme Court did not have the opportunity in *Johnson* to determine whether a mortgagee who fails to timely file a proof of claim may have voting rights or the right to distribution in the bankruptcy case.

 While the definition of a claim under 11 U.S.C. § 101(5) is a broad one it is important to analyze the right to vote as it sets forth the right to accept or reject the plan. The right is limited to those who have a claim under § 502 and only those parties may accept or reject the plan. Pursuant to 11 U.S.C. § 502, allowance of the claim is limited to one "proof of which is *filed* under section 501." 11 U.S.C. § 502(a) (emphasis added).[5]

---

4. Bankruptcy Rule 3003(a) provides:
 (a) *Applicability of Rule.* This rule (3003) applies in Chapter 9 and 11 cases.

5. It should be noted that the secured portion of the claim is unaffected as 11 U.S.C. § 506(a) divides a secured claim into a secured claim and an unsecured portion. Since the secured portion

is to be dealt with under the plan (through recognition of the continued existence of the lien or if a sale is to occur, by the lien attaching to the proceeds), it is unimpaired under 11 U.S.C. § 1124 and it is deemed to have accepted the plan. 11 U.S.C. § 1126(f). If another arrangement is made, of course, it must consent.

**164**

A creditor who fails to file timely a proof of claim can "not be treated as a creditor with respect to voting and distribution ... [however] its inaction [does] not extinguish the [creditor's] ... valid pre-petition lien." *Relihan v. Exchange Bank*, 69 B.R. 122, 124 (S.D.Georgia 1985); Fed. R.Bankr.P. 3003(c)(2), (3). Applying the logic of *Johnson* and *Relihan* together, it becomes clear that while the mortgage is a claim in the case, ICC cannot collect on the secured claim *from the bankruptcy estate.*[6] However, pursuant to *Johnson* and *Relihan,* ICC's valid pre-petition lien will survive the bankruptcy and may be asserted against the property post-bankruptcy. *Johnson,* 501 U.S. at 82–83, 111 S.Ct. at 2153–54, 115 L.Ed.2d at 74; *Relihan,* 69 B.R. at 125. The *Relihan* court suggests, and this court agrees, that the bankruptcy court has authority to include in the order of confirmation (if the plan is confirmed) recognition of the continued existence of the lien of a secured creditor who failed to file a proof of claim. *Relihan,* 69 B.R. at 128.

### ICC Cross Motion to Withdraw 1111(b) Election

ICC cross-moves to withdraw its 1111(b) election so that it may vote its unsecured claim. The debtor's first amended disclosure statement was approved on March 5, 1993. The 1111(b) election was made on October 27, 1992. Since the election was made prior to the approval of the disclosure statement it is timely and therefore valid. 11 U.S.C. § 1111(b); Fed.R.Bankr.P. 3014.[7] The court has already ruled that the unse-

cured claim created by bifurcation is not allowed pursuant to Fed.R.Bankr.P. 3002(a). Thus, while ICC's claim was a recourse claim, application of the Bankruptcy Rules converts the claim into a non-recourse claim.

The court therefore assumes that the cross-motion is moot. There is no logical reason why ICC would elect to withdraw its 1111(b) election and be left only with a secured claim equal to the value of the collateral when it could have a claim equal to the full value of the lien[8] if the election is made. The court therefore, need not address the arguments made by the parties on the issue of when a creditor may revoke an 1111(b) election.[9]

### Debtor's Motion to Strike ICC's 1111(b) Election

The issue that remains is whether ICC had the right, in the first place, to make an 1111(b) election. The only precondition to the application of § 1111(b) is that the creditor hold a "claim secured by a lien on property of the estate." *In re 680 Fifth Avenue Associates,* 156 B.R. 726, 734 (Bankr. S.D.N.Y.1993); (quoting 11 U.S.C. § 1111(b)). To make the election, the class of claims of which such claim is a part must elect to do so pursuant to the formula of § 1111(b)(1)(A)(i).[10] Thus, all that is required is a "claim" as defined in 11 U.S.C. § 101(5).

"The Supreme Court has stated that when the language of the Bankruptcy Code is clear and unambiguous, the plain meaning controls issues of statutory interpreta-

---

6. While ICC may not receive a distribution from the estate, as discussed in footnote 5 ICC may have its lien attached to the proceeds of a sale of the property.

7. The debtor's original disclosure statement was filed on August 17, 1992. In response to the treatment of its claim the RTC made its 1111(b) election on October 27, 1992. Thereafter, on January 8, 1993, the debtor filed its first amended plan in reaction to the RTC's election.

8. This option will be of greater value if the value of the collateral increases. On the other hand, the value of the lien can not be any lower under this option because if the value of the collateral decreases the claim will be of lesser value re-

gardless of whether ICC makes the 1111(b) election or not.

9. 1111(b) election by an undersecured creditor is revocable only when a debtor materially alters a plan. *In re Bloomingdale Partners,* 155 B.R. 961, 971 (Bankr.N.D.Ill.1993); *Matter of IPC Atlanta Ltd. Partnership,* 142 B.R. 547, 553–554 (Bankr. N.D.Ga.1992); *In re Keller,* 47 B.R. 725, 730 (Bankr.N.D.Ia.1985).

10. 11 U.S.C. § 1111(b)(1)(A)(i) provides:

(i) the class of which such claims is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection.

tion...." *680 Fifth Avenue,* 156 B.R. at 734 (citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290, 299 (1989)). As mentioned above, the Supreme Court has held that a mortgage holder has a "claim" if the mortgage is enforceable against either the debtor or his property. *Johnson,* 501 U.S. at 85, 111 S.Ct. at 2154–55, 115 L.Ed.2d at 75. Since ICC is the holder of a claim under the *Johnson* decision, pursuant to the plain meaning of § 1111(b) ICC has the right to make an 1111(b) election.

An analysis of Bankruptcy Rule 3003 also supports ICC's ability to make an 1111(b) election. By failing to timely file its proof of claim ICC may "not be treated as a creditor with respect to such claim for the purposes of *voting* and distribution." Fed. R.Bankr.P. 3003(c)(2) (emphasis added). Clearly the term "voting" relates to the creditors' voting on approval of the plan. A creditor does not vote in favor of choosing the applicability of § 1111(b)(2), a creditor makes an "election." 11 U.S.C. § 1111(b)(2). A plain meaning analysis of Bankruptcy Rule 3003(c)(2) and Bankruptcy Code § 1111(b) compel this court to rule that ICC had the authority to make an 1111(b) election. Therefore, Debtor's motion to vacate the 1111(b) election is denied.

### Informal Proof of Claim

ICC argues that its predecessor, RTC, filed an informal proof of claim by sending two letters to debtors and one letter to the court prior to the bar date. *See* Letter from Richard West, Attorney for RTC, to Louis DeLucia, Debtor's Counsel, of September 4, 1991 ("September 4 Letter"); Letter from West to DeLucia of September 24, 1991 ("September 24 Letter"); and RTC's Letter Memorandum in Opposition to Debtor's Motion to Extend Retention of Accountant ("Letter Memorandum"). RTC's first two letters discuss RTC's position that the rents generated from debtor's property are cash collateral of the RTC. *See* September 4 Letter, at 2 and September 24 Letter, at 2. The third letter is actually a letter memorandum on the issue of debtor's retention of a certain CPA. *See* Letter Memorandum. In this letter RTC states that the "RTC has a perfected, first priority security interest in all of the debtor's assets, including all rents, income and profits generated by the debtor's operation of its sole asset, the Claremont Towers Apartments." Letter Memorandum, at 2. ICC argues that these letters constitute an informal proof of claim prior to the bar date and thus ICC's proof of claim filed after the bar date was merely an amendment.

"Courts allow informal proofs of claim that can later be amended to meet the requirements of the Federal Rules of Bankruptcy Procedure." *In re Dauer,* 165 B.R. 146, 147 (Bankr.D.N.J.1994). "To constitute an informal proof of claim there must be a writing which makes a demand on the estate and/or expresses an intent to hold the estate liable for the debt." *Id; See also First American Bank & Trust v. Butler Mach. Co. (In re Haugen Constr. Services, Inc.),* 876 F.2d 681, 682 (8th Cir.1989); *Charter Co. v. Dioxin Claimants (In re Charter Co.),* 876 F.2d 861, 863 (11th Cir.1989).

RTC did not, in any of its letters apprise the court of the amount of the claim. This amount, the full amount of the mortgage, was certainly ascertainable at the time the RTC submitted its letter brief. Some courts have held that a creditor asserting an informal proof of claim must provide the amount of the claim in the informal proof. *See Charter Co. v. Dioxin Claimants (In re Charter Co.),* 876 F.2d 861, 863 (11th Cir.1989). In the *Charter Co.* decision, cited by ICC in its brief, the 11th Circuit held that an informal proof of claim "must apprise the court of the existence, nature and amount of the claim (if ascertainable)...." *Charter Co.,* 876 F.2d at 863.

Judge Scholl held in *In re Wilbert Winks Farm, Inc.,* 114 B.R. 95 (Bankr. E.D.Pa.1990) that the amount of the claim need not be set forth for an informal proof of claim to be valid in the Third Circuit. *Wilbert Winks,* 114 B.R. at 97. Judge Scholl's opinion is based upon the Third Circuit's opinion in *In re Thompson,* 227 F. 981 (3d Cir.1915) wherein the Third Circuit held that an informal proof of claim must show "that a demand is made against the estate and must

show the creditor's intention to hold the estate liable." *Thompson*, 227 F. at 983. This court agrees with Judge Scholl in holding that the two factors of *Thompson* are the only requirements for an informal proof of claim and that the amount of the claim need not necessarily be asserted.

While RTC's failure to assert the amount of the claim is not controlling, the September 4 and September 24 letters fail to meet the criteria set out in *Thompson*. These letters address RTC's claim that rents generated by the property were the cash collateral of RTC. While a demand was made upon the estate, the demand was made with respect to the rents only. RTC did not even assert its security interest in the property. ICC argues that it logically follows that if a party asserts an interest in the rents that the party is asserting an interest in the property. This is not necessarily so; a secured creditor may have an interest in the rents only with no interest in the property. Thus, this court holds that the September 4 and September 24 letters do not constitute informal proofs of claim.

The Letter Memorandum also fails to meet the requirements of *Thompson*. This letter brief is similar to the creditor's letter submitted to the trustee in *In re Dauer*, 165 B.R. 146 (Bankr.D.N.J.1994). In *Dauer* the court held that the primary purpose of the letter was to respond to a subpoena request for documents and the creditor did not make a clear demand on the estate. *Id.* at 147. Similarly, in the instant case RTC submitted the letter brief in opposition to debtor's motion to extend the retention of a C.P.A. Within this letter RTC states that RTC "has a perfected, first priority security interest in all of the [d]ebtor's assets . . . ." Letter Memorandum, at 2.

While the letter does make reference to RTC's security interest, RTC fails to make a clear demand *against the estate* and to show that RTC intended to hold the *estate* liable. *Thompson*, 227 F. at 983 (emphasis added). In fact, the very purpose of the letters was to assert that the debtor had *no* interest in the property in question and therefore the property was not property of the estate. RTC may have intended to pursue an action against the property only outside the bankruptcy case. Indeed, this could even be the reason that RTC never filed a proof of claim. Because the secured creditor has the power to proceed against the property only it is especially important that the secured creditor make a clear demand upon the estate. *Thompson*, 227 F. at 983 (holding that making a demand on the estate "is especially the duty of a secured creditor, who has the choice . . . of relying upon the security and thereby giving up all or a part of his claim upon the estate"). This court holds that RTC, and therefore its successor, ICC, has failed to make a valid informal proof of claim. Thus, ICC's late filed proof of claim may not be deemed an amendment to an informal proof of claim.

### Estoppel

ICC makes two estoppel arguments. First, ICC asserts that debtor has consistently recognized the right of the RTC, and later ICC, to take any appropriate action, including the right to accept or reject a plan with respect to its secured claim. Second, it argues that debtor has consented to the allowance of other claims where the creditor failed to file a timely proof of claim. ICC argues that debtor should be estopped from asserting contrary positions.

Under the doctrine of judicial estoppel a party is precluded from asserting a position in a legal proceeding that is inconsistent with one previously asserted. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.1988); *See also AFN v. Schlott*, 798 F.Supp. 219 (D.N.J. 1992). ICC's assertion that debtor has previously acquiesced to the voting rights of the RTC, and now the ICC, is without merit. From the outset of these proceedings and maintained thereafter throughout, the debtor has consistently asserted that ICC's claim is disputed, and has conceded rights only with respect to the secured portion of the claim.

In the debtor's Chapter 11 petition at Schedule A–2, the claim of the RTC was listed as disputed. Additionally, both the debtor's original and amended disclosure statements state in Article III, section (2)

that the RTC's claim was listed as disputed in the debtor's petition. Both of these disclosure statements state in footnote (1) that pursuant to Bankruptcy Rule 3003(c)(2) the RTC's disputed claim will not be recognized as an allowed secured claim for purposes of treatment under the plan. Thus, ICC's first estoppel argument is not applicable to the facts of this case, as debtor has maintained in its filings that ICC's claim is disputed and that ICC would not have voting rights absent a timely filed proof of claim.

ICC's second estoppel argument is predicated on the factual assertion that debtor is treating ICC's claim differently than claims held by creditors Norstar Real Estate Corp.[11] and Watertroll, Inc.[12] ICC alleges that debtor has proposed disparate treatment of these claims, choosing to maintain a challenge only with respect to ICC's claim, acquiescing in the allowance of Watertroll's claim in an amount almost twice as large as scheduled and ignoring the disputed non-filed status of Norstar's claim.

█ ICC argues that the doctrine of judicial estoppel should preclude debtor from taking a position inconsistent with his positions with respect to the Watertroll and Norstar claims. "This doctrine, distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted." *Oneida Motor Freight v. United Jersey Bank,* 848 F.2d 414, 419 (3d Cir.1988); *Scarano v. Central Railroad Co. of New Jersey,* 203 F.2d 510, 513 (3d Cir.1953). Judicial estoppel focuses on the connection between the litigant and the judicial system and precludes a plaintiff who has obtained relief from an adversary by asserting one position from contradicting himself in the same court *against the same adversary* by asserting an

inconsistent position. *Scarano,* 203 F.2d at 513 (emphasis added).

█ The theory of judicial estoppel is not applicable to the instant case. First, the prior positions of debtor were not asserted in a prior legal proceeding. Generally, a "party must show that the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court." *Miller v. Willett (In re Miller),* 154 B.R. 987, 990 (Bankr.N.D.Fla.1993); *See also Teledyne Industries, Inc. v. N.L.R.B.,* 911 F.2d 1214, 1218 (6th Cir.1990). In the instant case, ICC argues that the debtor took a position by entering into a consent order with Watertroll and that the court accepted the position by approving the order. This argument is not persuasive; a settlement entered through a consent order is not a position taken under oath in a prior proceeding.

Second, the present and prior positions were taken with respect to *different* adversaries. Some courts have held that judicial estoppel may be applied even if privity does not exist. *See In re GHR Energy Corp.,* 62 B.R. 226, 233 (Bankr.S.D.Texas 1986). The Third Circuit, however, has held that judicial estoppel applies only when the prior and present statements were asserted against the same adversary. *Scarano,* 203 F.2d at 513. In the instant case, debtor has taken a different approach to the claims asserted by Norstar, Watertroll and ICC. This inconsistent treatment clearly does not fall within the province of the courts power to apply judicial estoppel.

█ Furthermore, this position is clearly contrary to the law of classification. It has been held that any secured claim is necessarily in a separate class. *In re Richard Buick, Inc.,* 126 B.R. 840, 853 (Bankr. E.D.Pa.1991); *In re Commercial Western*

---

**11.** Debtor listed Norstar's claim in the approximate amount of $2,500,000 and RTC's claim in the approximate amount of $7,290,000. Both claims are listed as disputed. *See* Debtor's Schedule A–2. Norstar has filed no proof of claim. Debtor has never moved to challenge Norstar's claim and Debtor's plan provides that Norstar will retain its lien on the property and be paid upon sale or refinancing.

**12.** Watertroll's claim was listed as disputed in the approximate amount of $44,000. *See* Debtor's Schedule A–3. Debtor moved on May 20, 1993 to expunge Watertroll's claim due to Watertroll's failure to file a proof of claim by the bar date. Debtor subsequently settled on December 13, 1993 for approximately $73,000 and the consent order specifically provides that Watertroll shall be entitled to cast a ballot with respect to the plan.

*Finance Corp.,* 761 F.2d 1329, 1338 (9th Cir. 1985); *In re Sullivan,* 26 B.R. 677, 678 (Bankr.W.D.N.Y.1982). In fact, each secured claim must be separately classified because the nature and extent of each lien is necessarily different. *Richard Buick,* 126 B.R. at 853; *Commercial Western Finance,* 761 F.2d at 1338; *Sullivan,* 26 B.R. at 678; 5 COLLIER ON BANKRUPTCY ¶ 1122.03[6] (15th ed. 1994). Once a separate class is established there is no requirement that the class should be treated similarly to any other class. 11 U.S.C. § 1123(a)(5) and (4), and 11 U.S.C. § 1123(b)(3).

### Adequacy of ICC's Disclosure Statement

On September 30, 1994, ICC submitted its First Amended Disclosure Statement and First Amended Plan of Reorganization. Debtor argues that ICC's amended disclosure statement does not contain adequate information and that the plan lacks an impaired class to vote on the plan. At a hearing on November 22, 1994, subsequent to the return date of the motion addressed in this opinion, the court approved ICC's amended disclosure statement. Additionally, the court held that the debtor's objections to ICC's disclosure statement were to be dealt with at confirmation. The issue of the existence of an impaired class to vote affirmatively on the plan will also be dealt with at confirmation.

### CONCLUSION

ICC's predecessor, RTC, failed to file an informal proof of claim. Thus, the proof of claim filed by ICC after the bar date is nothing more than a proof of claim filed out of time. ICC's argument that debtor is judicially estopped from denying the validity of ICC's claim is unpersuasive. As an undersecured creditor ICC's claim is bifurcated and the unsecured portion is not allowed due to the failure to file timely a proof of claim. The secured claim will survive bankruptcy. Additionally, the secured claim is a claim in the bankruptcy, but due to the failure to file a timely proof of claim, ICC does not have the right to vote or to a distribution from the estate on the secured claim.

Due to the court's disallowance of ICC's unsecured claim, ICC's cross-motion to with-

draw its 1111(b) election is moot. Debtor's motion to vacate ICC's 1111(b) election is denied and the 1111(b) election will stand. Thus, ICC holds a secured claim for the full value of the mortgage. However, ICC cannot vote this claim nor can it receive a distribution from the estate of the debtor on this claim.

Counsel for the debtor should submit an order embodying this opinion by reference within ten days of the date hereof.