In re: Be-Mac Transport Company, Inc.,

Debtor.

_____

No. 95-3249
_____

Federal Deposit Insurance           *
Corporation,                        *
                                    *
        Appellee,                   *
                                    *
            v.                      *
                                    *
Union Entities,                     *
                                    *
        Appellant.                  *


_____

No. 95-3251
_____

Federal Deposit Insurance           *    Appeals from the United States
Corporation,                        *    District Court for the
                                    *    Eastern District of Missouri.
        Appellee,                   *
                                    *
            v.                      *
                                    *
Be-Mac Transport Company, Inc.,     *
and the Plan Committee,             *
                                    *
        Appellants.                 *


_____

No. 95-3252
_____

Federal Deposit Insurance           *
Corporation,                        *
                                    *
        Appellee,                   *
                                    *
            v.                      *
                                    *
Union Entities,                     *
                                    *
        Appellant.                  *

_____

No. 95-3253
_____

Federal Deposit Insurance       *
Corporation,                    *
                                *
        Appellee,               *
                                *
            v.                  *
                                *
Be-Mac Transport Company, Inc.  *
                                *
        Appellant.              *


_____

Submitted:   April 8, 1996

Filed:   May 16, 1996
_____

Before BOWMAN, BEAM, and MURPHY, Circuit Judges.
_____


MURPHY, Circuit Judge.


Appellants claim that the district court[1] erroneously reversed the bankruptcy court's decisions denying appellee, the Federal Deposit Insurance Corporation (FDIC), leave to file a second amended proof of claim and confirming a reorganization plan. The appellants are Be-Mac Transport Company, Inc. (Be-Mac), the debtor; the Plan Committee, supervisor of Be-Mac's activities; and the Union Entities, a creditor consisting of several unions and trust funds that represent many of Be-Mac's current employees and over 700 former employees. The FDIC is a Be-Mac creditor. We affirm the district court.

_____

[1]The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

3

In June 1989, Be-Mac received a series of loans from Metro North which were reflected in various Uniform Commercial Code (UCC) filings and loan documents. About a year later, in March 1990, Be-Mac received some secured loans from Congress Financial Corporation (CFC). Metro North participated in about $1.8 million of CFC's loan, and also subordinated to CFC about $1.8 million of its 1989 loans to Be-Mac. After Metro North became insolvent in November 1992, the FDIC was appointed receiver.

Be-Mac subsequently filed for Chapter 11 bankruptcy in January 1993. In its bankruptcy schedule, Be-Mac initially listed the FDIC as having an undisputed, secured, and unliquidated claim of $614,947.78. Be-Mac later amended its schedule to reflect that it disputed the FDIC's secured claim. The bankruptcy court set the claims bar date for August 10, 1993.

On June 18, 1993, the FDIC filed a timely initial proof of claim for a secured amount of $1,793,280.22 and an unsecured amount of $623,533.08. Attached to this claim were some fourteen documents, including those underlying the 1989 Metro North loans and the 1990 agreements between Metro North and CFC. In November 1993, CFC paid the FDIC approximately $1.8 million using some of the liquidation proceeds paid to it by Be-Mac. The FDIC then discovered that its original claim had incorrectly included an unsecured portion and that it should have listed its entire claim as secured.

Because of this discovery, the FDIC filed an amended proof of claim on November 22, 1993. On the claim form, the FDIC noted the $1,793,280.22 payment it had received from CFC, but stated that it was still owed $1,103,040.14 in principal and interest. In response to paragraph 4, which requested attachment of the writing on which the claim was founded, the FDIC wrote "See Attached." The

FDIC attached a copy of the first page of the original claim form and a letter to the bankruptcy clerk requesting that the amended claim be filed. Paragraph 9 of the claim form stated that

> No security interest is held for this claim except

> [If security interest in the property of the debtor is claimed] The undersigned claims the security interest under the writing referred to in paragraph 4 hereof . . . .

The FDIC left this paragraph blank.

Following the filing of this amended proof of claim, the FDIC spoke on various occasions with Be-Mac about the nature of its claim. In December 1993, a FDIC credit specialist, Edward Campbell, explained to counsel for Be-Mac, Robert Sass, that the original claim form should have listed its entire claim as secured, and that the amended proof of claim represented the correct amount of its secured claim. Sass asked for supporting documentation. In February 1994, an FDIC attorney, Michael Kalkowski, called Sass and discussed the possibility of stipulating as to the correct amount of the FDIC's secured claim. Sass again asked for documentation, which was supplied sometime thereafter. Some two months later, in April, Sass called Kalkowski and stated that he would send him a letter with an offer to settle the claim. The promised letter arrived in June, stating that Sass had received the requested documents and proposing an offer of settlement. Sass and Kalkowski discussed the offer a few days later, but could not reach an agreement.

On June 30, 1994, Be-Mac and a committee of unsecured creditors filed a disclosure statement and joint plan of reorganization. The disclosure statement stated that

> The Class 3.3 Secured Claim of the FDIC arises from the transactions among Be-Mac, Metro North, and Allen Musgrove described in Article II above, "History."

5

Although the FDIC originally filed a Proof of Claim in this Case with both secured and unsecured components, it subsequently filed an Amended Claim containing only an unsecured component. However, the FDIC has not released its lien on the Assets by terminating its UCC filings. Therefore, the Plan provides that Confirmation of the Plan constitutes a release of any lien in favor of the FDIC and a termination of any related UCC filings.

Accompanying this statement, the plan provided that "Class 3.3 shall consist of any Secured Claim of the FDIC" and that it would be treated as an unsecured claim, consistent with its amended proof of claim. The plan further stated that

All liens not expressly preserved by the terms of this Plan shall be deemed voided by the entry of the order confirming the Plan and all filing relating to said liens deemed released. All Creditors are precluded from asserting lien rights against the Assets, either in this case or in any other proceeding.

On November 7, 1994, the bankruptcy court approved an amended version of the plan and disclosure statement, which did not affect the provisions regarding the FDIC's claim, and scheduled a hearing for confirmation of the plan for December 12.

Shortly after the FDIC received a copy of the November plan and disclosure statement, it filed on November 25, 1994, a Motion for Leave to File Amended Proof of Claim, along with a second amended proof of claim. In its motion, the FDIC asserted that it had a $2,878,220.22 secured claim which represented the approximately $1.8 million of Metro North's participation in CFC's 1990 loan to Be-Mac, and the remaining $1 million which CFC had not yet repaid under the 1990 subordination agreement between CFC and Metro North. The purpose of the motion was to clarify the FDIC's status as a secured creditor for purposes of voting and distribution in the reorganization proceedings.

The bankruptcy court held a hearing on the FDIC's motion to

file a second amended proof of claim on December 5, 1994. Counsel for FDIC explained that its motion was for an amendment to the amount of its secured claim, not a change from an unsecured to a secured claim. The appellants disagreed, arguing that the FDIC's first amended claim, filed in November 1993, only stated an unsecured claim, and that they had detrimentally relied on this status in drafting the reorganization plan. They urged the court to disallow the FDIC's untimely amendment. The bankruptcy court agreed, stating that "the FDIC waited just too long" to file its claim clarifying its secured status. The court entered a written order denying the FDIC's motion on December 8, 1994, stating that the FDIC's November 1993 amended claim was "allowed as a general unsecured claim in the amount of $1,080,940.78." The FDIC immediately filed a motion for reconsideration.

On December 14, 1994, the bankruptcy court held a hearing on the FDIC's motion for reconsideration and its objection to the plan. In the hearing on the reconsideration motion, the court told the FDIC counsel that it had denied leave to file a second amended claim because "you didn't seem to have a good reason to wait so long." Edward Campbell and Michael Kalkowski, the FDIC representatives who had worked on the case, then explained that they had discussed the FDIC's secured status with Be-Mac's counsel throughout the proceedings. The court recognized that the plan and disclosure statement unequivocally indicated that Be-Mac knew the FDIC was asserting a secured claim. It concluded, however, that both parties could have better clarified their positions throughout the proceeding. The court therefore denied the FDIC's motion for reconsideration. The FDIC then filed a notice of appeal in the district court from the orders denying its motion to file a second amended claim and denying its motion for reconsideration.

In the hearing on the confirmation of the plan that same day, the bankruptcy court stated that the FDIC's ballot as a secured creditor would be disregarded, and that only its ballot filed as an

7

unsecured creditor would be counted for purposes of accepting or rejecting the plan. The FDIC's negative vote as an unsecured creditor was not enough to defeat the plan.[2] The FDIC objected to the plan on the basis that its secured claim was improperly disallowed as untimely. The court overruled the objection and indicated its approval of the plan. It then issued an order confirming the plan on January 13, 1995, which stated that all the bankruptcy code requirements under 11 U.S.C. § 1129(a) had been satisfied. The FDIC timely filed a notice of appeal in the district court from the order confirming the plan.

The district court consolidated the FDIC's appeals, and reversed the bankruptcy court decisions on June 27, 1995. Citing 11 U.S.C. § 506(d) and Matter of Tarnow, 749 F.2d 464 (7th Cir. 1984), the court held that a lien interest could not be extinguished solely on the basis of an untimely filed proof of claim. On July 7, 1995, the district court stayed its judgment pending appeal to this court. On July 26, 1995, Be-Mac and the Plan Committee together filed a joint notice of appeal from the district court's judgment, and Union Entities filed a separate joint notice of appeal the same day.

**II.**

Appellants argue that the district court erroneously concluded

---

[2] Be-Mac and the unsecured creditors' committee initially filed a ballot report indicating that the FDIC's negative vote had overwhelmed the class of unsecured creditors. The plan proponents then argued that the plan could be confirmed under the cram down provision of 11 U.S.C. § 1129(b), which permits confirmation where the plan is fair and equitable with respect to each class of impaired claims that has not accepted the plan. At the end of the confirmation hearing, Be-Mac discovered that an error had been made in the ballot tabulation and that a sufficient number of unsecured creditors had actually accepted the plan. A cram down was therefore unnecessary, and the bankruptcy court's written order reflected that cram down was not required for confirmation of the plan.

that "the bankruptcy court committed reversible error when it extinguished the FDIC's lien for failure to file a timely proof of its claim." They contend that the FDIC's lien was not extinguished by its failure to file a timely proof of claim, but rather by confirmation of the reorganization plan. The only effect of denying the FDIC leave to file a second amended claim, they assert, was to prohibit the FDIC from participating in the reorganization as a secured creditor for purposes of voting and distribution. Moreover, they argue that the plan complied in all respects with the technical requirements for confirmation provided under 11 U.S.C. § 1129(a). Since the FDIC's lien was not specifically preserved by the plan, appellants claim the confirmation of the plan extinguished any lien the FDIC purportedly had pursuant to 11 U.S.C. § 1141(c). The reason for the district court's erroneous legal conclusion, they suggest, followed from improper consolidation of the two appeals.

The FDIC responds that an untimely proof of its secured claim could not extinguish the claim. Before a lien may be extinguished, it argues, the lien's validity must be determined by the bankruptcy court. No such determination was ever made in this case. Rather, the bankruptcy court disallowed its secured claim for being untimely when it denied its motion to file a second amended proof of claim. It then overruled the FDIC's objection to the plan, which provided for termination of the FDIC's lien upon the plan's confirmation, and confirmed the plan. The denial of its second amended claim led to the plan's confirmation, which erroneously voided its lien without a proper determination of the lien's validity. The FDIC argues that the district court properly consolidated the appeals from the bankruptcy court orders because they involved the same parties and facts.

On appeal, we review conclusions of law *de novo* and factual findings for clear error. In re Mathiason, 16 F.3d 234, 235 (8th Cir. 1994). A district court's decision to consolidate actions may

9

be reversed only for abuse of discretion.  <u>Enterprise Bank v. Saettele</u>, 21 F.3d 233, 235 (8th Cir. 1994).

A well-established principle of bankruptcy law is that liens pass through bankruptcy proceedings unaffected.  <u>Dewsnup v. Timm</u>, 502 U.S. 410, 417 (1992); <u>Long v. Bullard</u>, 117 U.S. 617, 620-21 (1886).  This means that a secured creditor need not file a claim in a bankruptcy proceeding to preserve its lien.  <u>See</u> <u>Tarnow</u>, 749 F.2d at 465-66.  Rather, a creditor with a loan secured by a lien on a debtor's assets may ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt.  <u>Id.</u> at 465.

Congress codified this principle in 1984 "to make clear that the failure of the secured creditor to file a proof of claim is not a basis for avoiding the lien of the secured creditor."  S.Rep. No. 65, 98th Cong., 1st Sess. 79 (1983).  11 U.S.C. § 506, entitled "Determination of secured status," provides that

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim such lien is void, unless –
>
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

Similarly, a secured creditor does not typically surrender its lien even if it chooses to file a claim against the bankruptcy estate.  <u>See</u> <u>Matter of Penrod</u>, 50 F.3d 459, 462 (7th Cir. 1995).  Once a proof of claim is filed, the claim is deemed allowed and the proof constitutes prima facie evidence of the claim's validity and amount.  11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f).  In order to disallow the claim, the debtor or another party in interest must object and request a determination of the lien's validity.[3]  11

---

[3]This burden shifting process has been succinctly described by one bankruptcy court in the following manner:

> A properly executed proof of claim constitutes prima facie evidence of its validity, and parties objecting to a claim bear the burden of going forward to "meet,

U.S.C. §§ 502(a)(b). The court must then notify the parties and hold a hearing to determine in what amount the contested claim should be allowed. 11 U.S.C. § 502(b). If the court determines the lien is invalid and denies the claim, the creditor will lose the lien by operation of the doctrine of collateral estoppel. Tarnow, 749 F.2d at 465.

A secured creditor who participates in the reorganization may also lose its lien by confirmation of a reorganization plan which does not expressly preserve the lien. Penrod, 50 F.3d at 463. Under 11 U.S.C. § 1141(c), "except as provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor." Since a lien constitutes an interest in property, 11 U.S.C. § 101(37), a lien not preserved by the plan may be extinguished by the plan's confirmation pursuant to § 1141(c). Penrod, 50 F.3d at 462-63. This is only true, however, if the lien holder participated in the reorganization; otherwise, its lien would not be "property dealt with by the plan." Id. at 463.

In this case, the FDIC timely filed an initial claim for a secured and unsecured amount. It then filed an amended claim to state the correct amount of its secured claim. Once the FDIC filed its original secured claim and the amended claim, the secured claim should have been deemed allowed and the proofs should have

---

overcome, or, at minimum, equalize the valid claim." . . . Once an objection is made and the burden of overcoming the claim is met, the ultimate burden of persuasion always rests on the claimant . . . .

In re Gridley, 149 B.R. 128, 132 (Bankr. D.S.D. 1992) (citations omitted); see also Gran v. Internal Revenue Serv., 964 F.2d 822, 827 (8th Cir. 1992).

constituted prima facie evidence of the claim's validity and amount.  See 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f).  The burden would have then shifted to Be-Mac or another party in interest to object to the claim so that a hearing could have been held to determine whether to allow the lien, and if so, in what amount.  See 11 U.S.C. § 502(b); Gran, 964 F.2d. at 827.

This procedure for determining whether the FDIC had a valid lien was never followed.  Neither Be-Mac nor any other creditor ever objected to the validity of the original or amended claim, or requested the court to determine whether the FDIC had a valid lien.  Instead, the appellants only objected to the FDIC's motion to file a second amended secured claim on the grounds that it was untimely, not because the FDIC did not have a valid lien.  At the December 5 hearing on the FDIC's motion, the appellants alleged that the FDIC's first amended claim indicated payment of its secured portion, leaving only an unsecured claim, and that the FDIC was now trying to change its claim to be secured.  Since the scheduled confirmation hearing on the reorganization plan was only a few weeks away, the appellants argued that the FDIC's secured claim should be disallowed for untimeliness.  The bankruptcy court agreed and denied the FDIC's secured claim because of its late filing.  It stated:

> My normal inclination on this kind of case is to go ahead and grant the motion, allow the late filing.  And I do that basically because I always think its -- you know, we really ought to look at the reality of the facts and of the claim.  The problem I have, though, in this one is that I think that the FDIC waited just too long. We're only a couple of weeks from confirmation.  There's no doubt that everybody in the case has relied on what they thought the FDIC claim was and they pursued it in that fashion.  I think it was detrimental reliance.  It certainly has a negative impact on the creditors.  And for those reasons . . . I'm going to go ahead and deny the request to file or amend this claim . . . obviously both sides are approaching this in good faith and it's just unfortunate that if the FDIC had caught the problem earlier I think the result would be different.  But this late I think it's too late.

12

Similarly, at the December 14 hearing on the FDIC's motion for reconsideration, counsel for Be-Mac emphasized that the issue was solely one of timeliness, rather than the lien's validity: "[W]hat we're here on at this moment is not whether there is a lien, it's whether the claim should be allowed to be filed." The bankruptcy judge also reiterated that his prior ruling turned on "the fact that [the FDIC] waited so long and [it] didn't seem to have a good reason to wait so long." Although the FDIC presented testimonial evidence to show that Be-Mac knew all along that the FDIC was asserting a secured lien,[4] the bankruptcy judge was not sufficiently convinced that the original order denying the FDIC's motion was wrong, and he therefore denied the motion for reconsideration.

At neither hearing did the bankruptcy court make factual findings or legal conclusions to show that the FDIC's lien was invalid. It instead denied the FDIC leave to file its proof of secured claim and allowed the FDIC to have only an unsecured claim based solely on the untimeliness of the filing. As the Tarnow court pointed out, "this ground of rejection does not call into question the validity of the lien." 749 F.2d at 465. The bankruptcy court therefore erred in disallowing the secured claim without first determining that the lien was invalid. See 11 U.S.C. § 502(a)(b).

Although the bankruptcy court's denial of the FDIC's second

---

[4]According to the unrefuted testimony from the FDIC representatives assigned to the case, the FDIC told Be-Mac's counsel in December 1993 that it had made an error on its original claim because it should have filed its entire claim as secured. Further discussions between Be-Mac's counsel and an FDIC attorney took place over the next several months regarding the possibility of stipulating to the correct amount of the FDIC's secured claim. In a letter dated June 9, 1994, Be-Mac's counsel proposed an offer of settlement, but the FDIC did not accept it.

13

amended claim did not by itself extinguish the FDIC's lien, it had that practical effect.  Once the claim was disallowed, the FDIC was effectively treated as if it had not filed proof of a secured claim.  It therefore could not participate as a secured creditor in the reorganization for purposes of voting and distribution.  See Fed. R. Bankr. P. 3003(c)(2), 11 U.S.C.; In re Claremont Towers, 175 B.R. 157 (Bankr. D.N.J. 1994).

At the confirmation hearing, the bankruptcy court disregarded a ballot cast by the FDIC as a secured creditor and counted only its ballot as an unsecured creditor in tallying up the votes for acceptance or rejection of the plan.  The FDIC's negative vote as an unsecured creditor was not enough to defeat the plan, and the bankruptcy court consequently confirmed the plan, thereby extinguishing any lien the FDIC may have had and terminating its UCC filings.

Under 11 U.S.C. § 506(d)(2), a lien is preserved if it "is not an allowed secured claim due only to the failure of any entity to file a proof of such claim. . . ."  Although the FDIC filed an initial secured claim with supporting documentation, and discussed the secured nature of its amended claim with Be-Mac counsel during the following months, the bankruptcy court held that the amended claim only asserted an unsecured claim and denied the second amended secured claim for untimeliness.  The reason the FDIC did not have an allowed secured claim was because the bankruptcy court denied its proof of claim.  Section 506(d)(2) specifically prevents the avoidance of liens based solely on the absence of a proof of a secured claim.  See S.Rep. No. 65, 98th Cong., 1st Sess. 79 (1983).  The district court therefore properly concluded that the bankruptcy court was wrong in disallowing and extinguishing the FDIC's lien because of the untimely filing.

Moreover, confirmation of the reorganization plan could not extinguish any lien the FDIC may have in this case.  Where a plan

14

does not expressly preserve a lien, a lienholder may lose it after confirmation of the plan, *provided that* the lienholder participated in the reorganization and its property was dealt with by the plan. See 11 U.S.C. § 1141(c); Penrod, 50 F.3d at 463. Here, the FDIC was not permitted to participate as a secured creditor in the reorganization for purposes of voting and distribution because its second amended proof of claim had been denied, and its amended proof of claim was treated as an unsecured claim. Since the FDIC could only vote on the plan and receive distributions as an unsecured creditor, its lien was never brought into the bankruptcy proceedings and could therefore not be extinguished by confirmation of the plan. See id.

Any lien held by the FDIC should have survived the bankruptcy proceedings in this case because the bankruptcy court did not determine the lien's validity before disallowing the claim and it improperly confirmed a plan extinguishing the FDIC's lien without permitting the FDIC to participate in the reorganization as a secured creditor. See 11 U.S.C. §§ 502(a)(b), 506(d) and 1141(c); Tarnow, 749 F.2d at 465; Penrod, 50 F.3d at 463; Claremont Towers Co., 175 B.R. at 163. It was error to extinguish the FDIC's lien by confirming the reorganization plan. The validity of the FDIC's lien has yet to be determined, of course, and on remand Be-Mac or any other interested party may object to it.

Finally, since the same facts and parties underlay each of the bankruptcy court's orders, the district court did not abuse its discretion in consolidating the FDIC's appeals. See Enterprise Bank v. Saettele, 21 F.3d 233, 235 (8th Cir. 1994) (district court has broad discretion in consolidating actions involving a common question of law or fact).

For these reasons the judgment of the district court is affirmed, and the cases are remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

RK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.