**In re Harry and Regina
DENNIS, Debtors.**

**Bankruptcy No. 97–50924.**

United States Bankruptcy Court,
D. New Jersey.

Feb. 23, 1999.

Eric Leinbach, Eric Leinbach Law Offices, Easton, PA, for debtors.

David R. Lyons, Lyons, Doughty & Veldhuis, P.C., Mount Laurel, NJ, for Chrysler Financial Corporation.

Mary A. Krieger, Manasquan, NJ, for Robert M. Wood, Trustee.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This matter is before the court on the debtors' objection to the tardy filing of a proof of claim and to a tardy objection to confirmation by Chrysler Financial Corporation ("Chrysler") and Chrysler's cross-motion to file its proof of claim and its objection to confirmation out of time. The issues are (1) whether a secured creditor who chooses to file a proof of claim is bound by the 90 day "bar date" under Federal Rule of Bankruptcy Procedure 3002(c) and (2) whether Chrysler has shown excusable neglect warranting extension of time to file an objection to confirmation under Fed.R.Bankr.P. 3015(f) and 9006(b)(1). The court reserved decision on these motions on October 7, 1998. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (L) and (O).

For the reasons which follow, the court holds that a secured creditor who objects to "cram down" of its claim must file a timely proof of claim and timely objection to confirmation. If a tardy proof of claim and tardy objection to confirmation are filed and the debtor objects on the grounds of tardiness, the proof of claim shall be disallowed, the objection to confirmation shall be overruled and the secured creditor shall receive the payment proposed by the confirmed plan.

## FINDINGS OF FACT

The debtors filed a petition for relief under chapter 13 of title 11, United States Code ("Bankruptcy Code" or "Code") on September 26, 1997. Ten days thereafter the debtors filed their chapter 13 plan providing in part for 36 monthly payments to Chrysler of $222.22 for a total of $8,000. The plan proposes a "cram down" of Chrysler, i.e. a payment of the value of the automobile securing Chrysler's claim in complete satisfaction of the lien, and a discharge of the remaining amount due Chrysler as an unsecured deficiency claim. On October 10, 1997, the court sent notice to Chrysler and all other creditors of commencement of the case and the meeting of creditors. The notice fixed the deadlines for objecting to confirmation and for filing proofs of claims as January 30, 1998 and February 5, 1998 respectively. Chrysler, the holder of a perfected security interest in the debtors' automobile, filed its proof of claim and objection to confirmation with the court on February 9, 1998. Copies of those papers were sent to debtors' counsel via telecopier on February 5, 1998. The debtors filed a motion objecting to Chrysler's tardy filing of its proof of claim and its objection to confirmation. Chrysler opposed the debtors' motion and cross-moved for authorization to file its proof of claim and its objection to confirmation out of time.

### Debtors' Position

The debtors acknowledge that a secured creditor is not required to file a proof of claim if it does not wish to obtain a distribution under the plan. However, the debtors contend that if a secured creditor wishes to obtain a distribution under the plan it must file a proof of claim and it is bound by the same time limit which binds unsecured creditors.

### Chrysler's Position

Chrysler argues that its claim should be recognized by the court because it is not disallowed under 502(b)(9). Chrysler supports its argument by noting that chapter 5 of the Bankruptcy Code is applicable to chapters 7 and 13 alike. Therefore, since 502(b)(9) excepts from disallowance claims identified in section 726(a), Chrysler reasons that the exception automatically extends to chapter 13 cases as well. Moreover, in support of its cross-motion, Chrysler asserts that its failure to timely file an objection to confirmation was the result of excusable neglect. Consequently, Chrysler argues that its untimely objection to confirmation should be recognized. Alternatively, Chrysler argues that the court may object *sua sponte* to the "cram down" of Chrysler's lien in the plan.

### Trustee's Position

The trustee contends that if a secured creditor does not file a timely proof of claim, it will receive the treatment proposed by the plan. The trustee agrees with the case law which disallows secured claims which are tardily filed, noting that without a bar date for all claims to be filed reorganization plans would be fraught with havoc. The trustee argues, however, that a secured creditor who fails to file a proof of claim by the bar date for claims may nevertheless be able to achieve the same result as a timely claim by raising a timely objection to confirmation. The trustee takes no position on whether the court should consider untimely objections to confirmation.

## CONCLUSIONS OF LAW

### A. Allowance of Claims

■ Bankruptcy courts have wrestled in recent years with whether the deadline for filing proofs of claims is applicable to secured creditors due to an apparent conflict between the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules" or "Rules"). Bankruptcy Code section 501, titled "Filing of proofs of claims or interests," states that a creditor **may** file a proof of claim. 11 U.S.C. § 501(a). The corresponding Bankruptcy Rule 3002, similarly titled "Filing proof of claim or interest," states in subsection (a) that "an unsecured creditor ... must file a proof of claim ... for the claim ... to be allowed...." Fed. R.Bankr.P. 3002. The language of the Code is permissive. The Rule, however, indicates that filing a proof of claim is mandatory for an unsecured creditor's claim to be allowed. By negative implication, Rule 3002(a) suggests that a secured creditor's claim may be

allowed without filing a proof of claim. Section 502 of the Code contradicts such an implication, however, in stating that "[a] claim . . . , proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, . . . , objects." 11 U.S.C. § 502(a). Rule 3003(c)(2) provides a limited exception in chapter 9 and chapter 11 cases to the requirement that a proof of claim must be filed by providing that all scheduled claims which are not designated as disputed, contingent or unliquidated are deemed allowed. With that exception, however, which is only applicable in chapter 9 and chapter 11 cases, the Code clearly requires a proof of claim to be filed for a claim to be allowed. No exception is made for secured creditors in section 502, thereby indicating that a secured creditor's failure to file in accordance with section 501 will prohibit allowance of its claim. The only reasonable conclusion, therefore, in reading the Code and the Rules together, is that, with a limited exception for certain claims in chapter 9 and chapter 11 cases, any creditor, secured or unsecured, must file a proof of claim for its claim to be allowed. Prior to the decision in *In re Hausladen*, 146 B.R. 557 (Bankr. D.Minn.1992), decisional law was well settled that untimely filed claims were barred under the former Bankruptcy Act and the Rules. The *Hausladen* case held, however, that untimely claims are not barred under the Bankruptcy Code. *Hausladen* generated a storm of controversy. *See In re Friesenhahn*, 169 B.R. 615, 626 n. 23 (Bankr.W.D.Tex.1994) (identifying dozens of conflicting decisions precipitated by the *Hausladen* case).

### 1. *In re Hausladen*

Noting that Code sections 501 and 502 failed to provide a filing deadline, unlike their predecessor section 57(n) of the Bankruptcy Act, the *Hausladen* court reasoned that Congress' omission marked an intentional departure from the pre-Code practice of disallowing untimely proofs of claim. 146 B.R. at 559. The court acknowledged that Rule 3002 suggests that allowance is predicated upon timely filing a proof of claim. *Id.* However, the court attributed that to hasty drafting by Congress to mirror former Rule 302, not to any disregard by Congress of its intent to abandon the filing deadline. The *Hausladen* court observed that the language of old Rule 302 implemented the bar date set forth in the statute itself—section 57 of the Bankruptcy Act. *Id.* The Bankruptcy Code, unlike the Bankruptcy Act, contains no bar date. Therefore, to give meaning to this statutory change, the *Hausladen* court reasoned that filing within the 90 day deadline in Rule 3002 cannot be treated as a prerequisite to allowance. *Id.* at 559–60. Regardless of the implicit deadline in Rule 3002, the court stressed that Code section 502 governs allowance and to the extent that any inconsistency exists between the Code and the Rules, the Code governs. *Id.* at 559. Section 502 provides that a claim for which proof is filed under section 501 is deemed allowed unless one of the eight enumerated exceptions applies. 11 U.S.C. § 502(b). Finding that lateness was not listed among the exceptions to allowance, the court held that tardily filed claims were allowed. *Id.* at 559.

In an effort to reconcile the apparent conflict between the Code and the Rules, the court opined that the 90 day deadline merely identified a claim's status as timely or tardy, which is relevant in determining a claim's priority under section 726. *Id.* at 560. The court cautioned, however, that the *treatment* of a claim must not be mistaken for the *allowance* of a claim. *Id.* at 560–61. Although the court acknowledged that section 726 has no application in chapter 13, it held nonetheless that the allowance of tardily filed claims in chapter 7 supported its conclusion that untimely claims are not strictly barred. *Id.* at 560.

### 2. *Hausladen* Challenged

Although the *Hausladen* case had some following, it was sharply criticized by a number of bankruptcy courts. *In re Zimmerman*, 156 B.R. 192 (Bankr.W.D.Mich.1993); *In re Chavis*, 47 F.3d 818 (6th Cir.1995); *In re Bailey*, 151 B.R. 28 (Bankr.N.D.N.Y.1993); *In re Johnson*, 156 B.R. 557 (Bankr.N.D.Ill. 1993); *In re Friesenhahn*, 169 B.R. 615 (Bankr.W.D.Tex.1994); *In re Forrester*, 1995 WL 499615 (Bankr.D.N.J.1995). Specifically, the *Zimmerman* court criticized *Hausladen's* flawed reconciliation of Rule 3002 and Code

section 502 as well as its equating barring with disallowing a claim. 156 B.R. at 195. Despite its acknowledging that a bar date was implied by Rule 3002, the *Hausladen* court nonetheless concluded that no bar date expressly existed under the Code or the Rules and any intimation of a bar date was attributable to Congress' hasty drafting of Rule 3002 to parallel the language of the old Rule 302. 146 B.R. at 559.

Finding this reasoning meritless, the *Zimmerman* court observed that the Code and the Rules serve distinctly different functions. By ignoring the time bar of Rule 3002 due simply to the omission of a bar date from the Code, *Hausladen* erroneously concluded that Congress intended to effect a major change in statutory law. *Zimmerman* opined that the omission simply evidenced Congress' intent to commit procedural matters to the Rules and substantive matters to the Code. 156 B.R. at 197–98. The court in *Zimmerman* therefore concluded that satisfying the time bar in 3002(c) was a condition precedent to allowance. *Id.* (quoting *In re Bailey,* 151 B.R. 28, 31 (Bankr.N.D.N.Y.1993)). *Id.* Comparing a proof of claim to an answer to a complaint, the court observed that the substantive claim is not reached unless it is timely filed. *Id.* at 198. Thus, barring a claim from going forward is different from disallowing it on substantive grounds. According to the *Zimmerman* court, if a proof of claim is tardily filed under Rule 3002, the claim is barred and the substantive grounds for disallowance enumerated in section 502 are never reached. *Id.* Consequently, *Zimmerman* found that omitting tardiness as a substantive exception to allowance under Code section 502 effected no change in the

pre-Code practice of barring late claims. *Id.*[1]

### 3. *Zimmerman* Analysis Extended To Secured Creditors

The analysis of *Zimmerman* and its progeny was extended by the United States Bankruptcy Court for the Northern District of Illinois in *In re Schaffer,* 173 B.R. 393, 396 n. 6 (Bankr.N.D.Ill.1994) to embrace secured claimants. The court disallowed an undersecured creditor's claim in its entirety due to tardy filing. Although the secured creditor may refrain from filing and simply look to its lien for satisfaction of the debt, the court held that distributions through the chapter 13 plan were predicated upon filing. 173 B.R. at 395. Rule 3021 instructs that distributions must be made on allowed claims. Code section 502 treats claims as allowed if filed under section 501. No distinction is made between secured and unsecured claims in section 501. Similarly, its procedural counterpart, Rule 3002(c), fails to make such a distinction. The *Schaffer* court reasoned that "[i]f Congress wanted to exclude secured creditors from the requirements of 3002(c) it would have done so as part of the exceptions to that section." *Id.* at 396 n. 8. Thus, the court concluded that tardily filed secured claims were barred and plan distributions on those claims were therefore prohibited. *Id.* at 397.

### 4. Section 502(b)(9)—Congress Overrules *Hausladen*

Congress responded to the conflicting decisions regarding tardily filed proofs of claims in the Bankruptcy Reform Act of 1994 by adding subsection (9) to Code section 502(b). Section 502(b)(9), which provides another

1. Following the *Zimmerman* analysis, the court in *In re Tucker,* 174 B.R. 732, 739 (Bankr.N.D.Ill. 1994) summarized *Zimmerman's* findings with respect to the relationship among Code sections 501 and 502 and Bankruptcy Rule 3002:
 (1) § 501 creates the substantive right to file a claim and identifies the parties holding that right; (2) § 502 provides for analysis of the merits of a claim; (3) § 502 states that a claim, proof of which is filed in accordance with § 501, is deemed allowed, unless a party in interest objects; (4) thus, filing under § 501 is a prerequisite to being deemed allowed under § 502; (5) § 501 contemplates a procedural

requirement of timely filing, as § 501(b) and (c) discuss who may file in terms of whether or not someone else has timely filed; (6) Rule 3002 provides the procedural answer to when a claim is timely filed; (7) therefore, § 501 incorporates Rule 3002; and (8) since § 501 incorporates Rule 3002 and compliance with § 501 is a prerequisite or condition precedent to allowance under § 502, then compliance with Rule 3002 and its timeliness requirement is also a prerequisite or condition precedent to allowance under § 502.
174 B.R. at 739.

ground for disallowance of claims, states that the court shall allow a claim "except to the extent that—(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure . . ." 11 U.S.C. § 502(b)(9). According to the House Judiciary Committee, this amendment was intended to expressly overrule *Hausladen.* H.R. No. 103–835, at 48 (1994).

Chrysler argues that notwithstanding Code section 502(b)(9) and its legislative history, the allowance of late filed claims under section 726(a) extends to chapter 13 cases since the exception is noted in chapter 5 of the Code which applies to both chapters 7 and 13. The court finds this argument wholly without merit. If the mere mention in chapter 5 of an exception for late claims in chapter 7 automatically extended to the other chapters, it would be an exception without meaning, for the exception would swallow the Rule.[2]

### 5. The 1996 Amendments to Rule 3002 Confirm that Late Claims are Disallowed

Congress amended Rule 3002 in 1996 to conform to the 1994 amendment to section 726 and the addition of section 502(b)(9). The phrase "filed in accordance with this rule" was deleted from Rule 3002(a)[3] to establish that the effect of late filing would be governed by Code section 502(b)(9) not by the Rule. Thus, by enacting Code section 502(b)(9) and modifying Rule 3002, Congress elevated disallowance of claims for tardiness from a procedural matter, as *Zimmerman* had held, to a matter of substantive law.

### 6. 502(b)(9) Disallows Late Claims in Chapter 13

 Having concluded that the recent amendments manifest Congress' intent to disallow late filed claims, the next question is to which claimants the Code section applies. Neither secured nor unsecured claims tardily filed in a chapter 13 case are excepted from disallowance under section 502(b)(9). If Congress intended tardily filed claims in chapter 13 to be allowed, they too would have been excepted from § 502(b)(9) as were tardily filed claims under § 726(a). The court therefore concludes that any claim tardily filed in a chapter 13 case to which an objection has been raised based on tardiness shall be disallowed. This conclusion is supported by consideration of pre-Code practice as well as Code practice under the former Rules.

### 7. Pre–Code Practice

A time bar for the filing of claims was first instituted under the Bankruptcy Act of 1898 ("the Act"). *In re Stern,* 70 B.R. 472, 474 (Bankr.E.D.Pa.1987). See also *In re Tucker,* 174 B.R. 732, 734–35 (Bankr.N.D.Ill.1994) for a discussion of pre-Code practice. Section 57(n) of the Act originally prohibited proving claims against the bankruptcy estate after one year from adjudication. As early as 1915 the United States Court of Appeals for the Third Circuit addressed whether a secured creditor was entitled to prove a claim against the bankruptcy estate after the period for filing had lapsed. The decision in *In re Thompson (First National Bank of Woodbury v. West),* 227 F. 981 (3d Cir.1915), was rendered under the original section 57(n) of the 1898 Act. Holding that the secured creditor was bound by the one year filing period, the Court of Appeals for the Third Circuit stated that it "is especially the duty of a

---

**2.** One bankruptcy court found merit in a similar argument that 1325(a)(4) requires allowance of late filed claims in chapter 13. Since a late-filing creditor's claim may be allowed and entitled to distribution of any surplus pursuant to section 726(a)(3), the court held that section 1325(a)(4) mandates that late claims be allowed to satisfy the liquidation alternative test. *In re Gullatt,* 164 B.R. 279, 281–82 (Bankr.M.D.Tenn. 1994) *rev'd* 169 B.R. 385 (M.D.Tenn.1994). The decision was overturned on appeal wherein the district court stated that "[l]ate filed claims are

not allowed under Chapter 13, so they need not be compared with late filed claims under Chapter 7." *Gullatt,* 169 B.R. at 390.

**3.** After the 1996 amendments, Rule 3002(a) states:

(a) NECESSITY FOR FILING. An unsecured creditor or an equity security holder must file a proof of claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005.

secured creditor" to show proof of its claim against the estate. *Id.* at 983. The secured creditor's failure to comply with the statutory requirements limited the creditor to its collateral. *Id.*

Subsequent amendments reduced the filing period to six months from the initially scheduled creditors' meeting. Section 57(n) of the Act as amended in 1938 stated: "Except as otherwise provided in this Act, all claims provable under this section, . . ., shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed." 11 U.S.C § 93(n) (repealed 1978). *See* 3 LAWRENCE P. KING, ET AL., COLLIER ON BANKRUPTCY ¶ 57.26 (14th ed.1978). This time bar was rigidly applied by a majority of courts. *See In re Mellen Manufacturing Co.*, 287 F.2d 37, 38 (3d Cir.1961) (treating the six month time limit as a definitive cut-off date); *In re Pigott*, 684 F.2d 239, 243 (3d Cir.1982) (recognizing strict construction of section 57(n)); *In re Stern*, 70 B.R. at 475 (applying time bar strictly to maintain Congress' objective of finality).

### 8. Enactment of the Bankruptcy Reform Act

Enactment of the Bankruptcy Code in 1978 did not coincide with the enactment of the Federal Rules of Bankruptcy Procedure. The Bankruptcy Reform Act which enacted the Code provided in section 405 that the rules in effect under the former Bankruptcy Act would continue to the extent that they were not inconsistent with the Code. The Federal Rules of Bankruptcy Procedure became effective in August, 1983. Therefore, the former Rules were still in effect when Code sections 501 and 502 were adopted.

Former Rule 13-302(a) provided that "every creditor" must file a proof of claim for its claim to be allowed.[4] The filing requirements for secured and unsecured claims in Chapter XIII were separately identified in Rule 13-302(e) which stated in relevant part:

(e) Time for Filing.

(1) Secured Claims. A secured claim, whether or not listed in the Chapter XIII Statement, must be filed before the conclusion of the first meeting of creditors in the Chapter XIII case unless the court, on application before the expiration of that time and for cause shown, shall grant a reasonable, fixed extension of time. Any claim not properly filed by the creditor within such time shall not be treated as a secured claim for purposes of voting and distribution in the Chapter XIII case. Notwithstanding the foregoing, the court may permit the later filing of a secured claim for the purposes of distribution by the debtor, the trustee, or a codebtor.

(2) Unsecured Claims. Unsecured claims, whether or not listed in the Chapter XIII Statement, must be filed within 6 months after the first date set for the first meeting of creditors in the Chapter XIII case, . . . .

No conflict existed between the language of the Rule and the chapter 13 statutory requirements.[5] Unlike section 57(n) of the Act, sections 501 and 502 of the Code are silent with respect to the timing of filing proofs of claim. Rule 13-302 supplied the filing deadlines for both secured and unsecured creditors which, when read in conjunction with the Code, gave meaning to "timely file" as stated in section 501. *See Corbett*, 68 B.R. at 483.

---

4. Fed.R.Bankr.P. 3002(a) is derived in part from former Rules 302(a) and 13-302(a). Rule 3002(c) is derived from former Rules 302(e) and 13-302(e). Under the former Rules, Rule 302 applied only in liquidation cases whereas Rule 13-302 applied only to Chapter XIII wage-earner cases. 9 LAWRENCE P. KING, ET AL, COLLIER ON BANKRUPTCY ¶ 3002.RH (rev. 15th ed.1998); 15 *Id.* ¶ 13-302.08 (14th ed.1978).

5. An inconsistency existed between Code section 1325 and Rule 13-302 only to the extent that late filing under Rule 13-302 denied a creditor its secured status for voting purposes, as the Code abandoned the practice of creditor voting under chapter 13. The United States District Court for the Western District of Missouri noted in *In re Corbett*, 68 B.R. 480, 483 (W.D.Mo.1984), that elimination of voting for chapter 13 plans from the Code does not make Rule 13-302 and the Code irreconcilable. The court stated, "it does not follow that the filing deadlines in Rule 13-302 thereby are an obstacle to the accomplishment of the full purposes and objectives of Congress in adapting the Code." *Id.*

Legislative history indicates, however, that this change in the statutory text does not represent a change in the pre-Code practice of requiring filing of proofs of claims by a fixed deadline. Congress merely intended to separate substantive law from procedural rules. "The Rules of Bankruptcy Procedure and practice under the law will guide creditors as to when filing is necessary and when it may be dispensed with.... The Rules of Bankruptcy Procedure will set the time limits, the form, and the procedure for filing, which will determine whether claims are timely or tardily filed." H.R.Rep. No. 595, 95th Cong., 1st Sess., 351 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., 61 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5847, 6307. The Supreme Court of the United States acknowledged in *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992), that Congress does not write on "a clean slate" when it amends the Bankruptcy Code. The Court stated: "this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Id.* The legislative history is completely devoid of any intention to change the pre-Code practice of disallowing late filed claims. Furthermore, there is no record of any intention to abandon the filing deadline for secured creditors. As such, Congress' silence on this issue actually makes a very loud statement respecting its intention to carry forward from the Act and the old Rules filing deadlines for secured and unsecured creditors alike. *See In re Gullatt,* 169 B.R. at 388; *In re Messics,* 159 B.R. 803, 809 (Bankr. N.D.Ohio 1993).

### 9. Enactment of the Federal Rules of Bankruptcy Procedure

Evaluating a claim's status as timely in relation to the first meeting of creditors was continued when Congress enacted the Federal Rules of Bankruptcy Procedure in 1983. Although the distinction in old Rule 13–302(e) between secured and unsecured creditors was eliminated under Rule 3002(c), the legislative history indicates no intention to abandon the filing deadline for secured creditors while maintaining it for unsecured creditors. The Advisory Committee Notes to Rule 3002(c) state that the language of Rule 3002(c) manifests Congress' intention to abandon the requirement that secured creditors file **earlier than** unsecured creditors.[6] In addition, Congress shortened the six month filing period for unsecured creditors to 90 days, thereby subjecting both secured and unsecured creditors to the same 90 day filing period. Had Congress intended secured creditors to be treated differently from unsecured creditors for filing purposes, it would have retained a distinction between them in the text of the new Rule. However, Rule 3002(c) provides that in Chapters 7, 12 and 13, "a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors... ." Fed.R.Bankr.P. 3002(c). Like Code section 502, subsection (c) of Rule 3002 makes no distinction between secured and unsecured creditors. Subsection (c) of the Rule refers to "a proof of claim" rather than "an unsecured creditor's proof of claim." Had Congress intended to abandon the filing deadline for secured creditors, the rule's restricted application to unsecured creditors would have been expressly stated. The explicit reference to unsecured creditors in subsection (a) of the same Rule does not suggest that subsection (c) is thereby applicable only to unsecured creditors. *In re Thomas,* 85 B.R. 608, 613 (Bankr.N.D.Ala.1988); *rev'd on other grounds* 91 B.R. 117 (N.D.Ala.1988); *aff'd* 883 F.2d 991(11th Cir.1989). *See also In re Schaffer,* 173 B.R. 393, 396 n. 8 (Bankr. N.D.Ill.1994) (recognizing that the word "unsecured" in Rule 3002(a) is not necessarily applicable to 3002(c) and had Congress intended to exclude secured creditors it would have listed them among the exceptions

---

**6.** Another significant change from former Rule 13–302 is the elimination in Rule 3002 of a discretionary extension of the filing period. Fed. R.Bankr.P. 9006(b)(3) limits enlargement of the filing period under Rule 3002(c) except as specif-

ically provided in that rule. Rule 3002(c) provides five narrow exceptions to the 90 day filing period none of which are applicable in the instant case.

to subsection (c)). *Cf. In re Harris*, 64 B.R. 717 (Bankr.D.Conn.1986).

The question then arises as to the meaning of the statement in Rule 3002(a) that "[a]n unsecured creditor ... must file a proof of claim ... for the claim ... to be allowed," with exceptions not pertinent here. That sentence seems to imply that a secured creditor need not file a proof of claim for the claim to be allowed. Indeed, the Advisory Committee Note to Rule 3002 as enacted in 1983 states that "A secured claim need not be filed or allowed under § 502 or § 506(d) unless a party in interest has requested a determination and allowance or disallowance under § 502." The omission in Rule 3002(a) of a requirement for secured creditors to file proofs of claim undoubtedly has its origin in the fact that "[u]nder the Bankruptcy Act of 1898, a lien on real property passed through bankruptcy unaffected." *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 778. It is true under the Code as well that unless a party in interest seeks to modify a lien on real or personal property, the lien passes through bankruptcy unaffected. In such cases, Rule 3002(a) recognizes that a secured creditor does not have to file a proof of claim.

■ The Code contains various provisions authorizing modification of liens, however, including the sections dealing with the contents of chapter 13 and chapter 11 plans. See Code sections 1322(b)(2) and 1123(a)(5)(E) and (b)(5). If a chapter 13 plan which modifies a secured claim is confirmed, it binds the creditor "whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). A plan term proposing modification of a secured claim is certainly a "request for determination and allowance or disallowance" of such claim within the meaning of the Advisory Committee Note to Rule 3002(a), which as noted, states that in such instances a secured creditor must indeed file a proof of claim. If not, such creditor will be bound by the plan.

This construction of Rule 3002(a) reconciles it with Rule 3002(c) and the same Advisory Committee Note which states regarding subdivision (c) that "the special rule for **early** filing by a secured creditor in a chapter 13 case in former Rule 13–302(e)(1) is not continued." [emphasis added]. This construction also reconciles Rule 3002(a) and (c) with Code section 502(a), which provides that "a claim," proof of which is filed, is deemed allowed unless a party in interest objects. Code section 101(5) states that " 'claim' means—(A) right to payment, whether or not such right is ... secured, or unsecured ..." If an objection to "a claim" is made, then under section 502(b)(9) such "claim" is disallowed if "proof of such claim is not timely filed," with exceptions not pertinent here. Reading Code sections 101(5) and 502 together, Congress clearly intended that all "claims" as defined in section 101(5), whether secured or unsecured, shall be disallowed if not timely filed.

■ Reading these sections of the Code and Rule 3002 together leads to the following conclusions. If a chapter 13 plan does not propose to modify a secured claim, then by virtue of Rule 3002(a) the secured creditor is not required to file a proof of claim and the lien will pass through bankruptcy unaffected. If, however, a plan does propose to modify a secured claim, by paying the secured creditor less than the creditor believes is due, the secured creditor who objects to such treatment must file a timely proof of claim and objection to confirmation or it will be bound by the plan under Code section 1327(a). *In re Szostek*, 886 F.2d 1405 (3d Cir.1989); *In re Wolf*, 162 B.R. 98 (Bankr.D.N.J.1993).

■ Similarly, since Code section 1327(a) also binds the debtor, a debtor's proposal in a plan to pay a "cram down" amount to a secured creditor is an admission by the debtor that such creditor has an allowed secured claim to the extent provided by the plan. Confirmation of the plan allows the secured claim to such extent because all parties are bound by the confirmation under Code section 1327(a). The trustee then pays the secured creditor as provided by the plan pursuant to Code section 1326(a)(2) and Rule 3021.

■ To the extent that *Schaffer* and other courts have held that a secured creditor must file a proof of claim even to receive the amount which a debtor's plan proposes to

pay it, this court disagrees, because such holdings overlook the fact that confirmation binds the debtor under Code section 1327(a). Moreover, in light of Rule 3002(a)'s omission of an explicit requirement that secured creditors must file proofs of claim, and the fact that the notice of the bar date states that proofs of claim must be filed to share in payment from the estate "except as otherwise provided by law," a serious due process issue would exist if secured creditors who choose not to file a proof of claim in reliance on a plan's terms could then be told after confirmation that they shall not receive the payment proposed in the plan. If debtors want that result, the plan and notice must explicitly state that the lien is to be cancelled, or words to that effect, and that the secured creditor shall receive no payment. *See In re Wolf, supra* (where plan proposed that mortgage "shall be crammed down to zero and canceled on the record," confirmation terminated the lien).

### 10. Policy Dictates Holding Secured Creditors to Rule 3002(c) Filing Deadline

Policy considerations also support the court's conclusions. Failure to bind secured creditors to the 90 day filing period would impair or destroy the plan distribution process. Code section 1326(a)(2) provides that when a plan is confirmed the trustee shall make the payments provided by the plan as soon as practicable. Without a deadline for the filing of claims, secured creditors could file at any time during the term of the confirmed plan, which in chapter 13 cases may be as long as sixty months. Distribution under the plan in accordance with confirmation requirements would be virtually impossible. Chapter 13 requires that allowed secured claims receive distributions valued at not less than the allowed amount of the claims as measured on the effective date of the plan.[7] The chapter 13 trustee could not administer the plan with any measure of certainty if a secured creditor could file its claim years after the effective date and thereby become entitled to a distribution of the amount of such claim. Such practice would require the trustee to predict future claim filings and perhaps to set aside funds for distribution to such secured creditors who file if and when they are so inclined. Moreover, allowing tardily filed claims in chapter 13 might also permit late-filing creditors to recapture payments already distributed to other creditors. *Tucker,* 174 B.R. at 743; *See also In re Turner,* 157 B.R. 904, 911 (Bankr.N.D.Ala.1993); *In re Duarte,* 146 B.R. 958, 960–61 (Bankr.W.D.Tex.1992). That would be another disastrous effect of such a practice. Similarly, creditors who filed within the deadline would be penalized by permitting late-filing creditors to reduce or delay the dividend available for distributions on their claims.

Modification of the plan would also be necessary each time a secured creditor filed a claim at variance with the plan and satisfaction of section 1325(a)(4) and (5) would have to be reexamined upon each modification.[8] *See In re Macias,* 195 B.R. 659, 661–63 (Bankr.W.D.Tex.1996) (discussing the consequences of a secured creditor's failure to timely file); *See also In re Gullatt,* 169 B.R. at 388 (citing *Messics* for the proposition that absence of a bar date could prevent a debtor's discharge despite years of payments).

For all of these reasons, disallowing participation in the plan distribution process beyond the "cram down" amount proposed in the plan is the price the secured creditor

---

7. Section 1325(a)(5) states that a plan shall be confirmed if:

 (5) with respect to each allowed secured claim provided for by the plan—
 (A) the holder of such claim has accepted the plan;
 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
 (C) the debtor surrenders the property securing such claim to such holder;

8. Section 1325(a)(4), commonly referred to as the Best Interests of Creditors Test or the Liquidation Alternative Test, requires that payment on each allowed unsecured claim shall be not less than the amount to which the creditor would be entitled if the estate were liquidated under chapter 7.

justly pays for failing to file a proof of claim within the established deadline.

### 11. The Time for Filing a Proof of Claim Cannot be Enlarged

■ Chrysler's proof of claim was filed nine days after the bar date. Rule 3002(c) requires the filing of a proof of claim not later than 90 days after the first date set for the meeting of creditors. Rule 9006(b)(3) limits the court's discretion in enlarging time under Rule 3002(c) to the exceptions noted in the latter rule, none of which are applicable here. Therefore, "excusable neglect" is not a basis for allowance of late claims in chapter 13. *See Pioneer Investment v. Brunswick,* 507 U.S. 380, 389 n. 4, 113 S.Ct. 1489, 1495 n. 4, 123 L.Ed.2d 74, 85 n. 4 (1993) (noting that excusable neglect is not applicable to late claims under Rule 3002(c)). As the Supreme Court has noted in another bankruptcy context, "[d]eadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643–44, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280, 286 (1992) (denying a trustee an extension of time under Rule 4003(b) to object to an exemption).

### B. Objection To Confirmation

Rule 3015(f) governs objections to confirmation. The Rule requires filing of objections prior to plan confirmation. Its counterpart in the Code is found in section 1324, which provides that a party in interest may object to confirmation. While an objection to confirmation will usually be related to the filing of a proof of claim, they are nevertheless different actions with different deadlines. In this case, Chrysler asserts that the debtors' plan understates the value of the vehicle and fails to include required interest, thereby failing to comply with the "cram down" requirements of Code section 1325(a)(5)(B)(ii). As previously noted, the debtor objected to consideration of Chrysler's objection as untimely and cross-moved to deny such objection.

Chrysler replied that the tardiness of the objection was caused by its attorney's failure to diary the deadline properly because of a large influx of files and a turnover of personnel. Chrysler adds that it faxed the proof of claim and the objection to confirmation to debtors' counsel on February 5, 1998, the deadline for filing of proofs of claim, to prevent prejudice to the debtors from the late filing. Chrysler argues that these facts create excusable neglect permitting its objection to be considered notwithstanding its untimeliness.

■ Rule 3015(f) states that objections to confirmation are governed by Rule 9014, the rule governing contested matters. Neither of those rules is listed in Rule 9006(b)(2) or (3) among the rules for which enlargement of time is disallowed or limited to the circumstances set forth in such rules. Therefore, under Rule 9006(b)(1) the court has discretion to permit an untimely objection to confirmation where the lateness is due to excusable neglect.

There are several issues which need to be addressed to resolve this issue. The first is whether, assuming *arguendo* that Chrysler could otherwise show excusable neglect, consideration of its untimely objection to confirmation would be tantamount to allowance of an untimely proof of claim, which the court has held cannot be permitted. A proof of claim is a written statement of a creditor's claim. Fed.R.Bankr.P. 3001(a). A proof of claim executed and filed in accordance with the rules constitutes prima facie evidence of the validity and the amount of the claim. Fed.R.Bankr.P. 3001(f). An allowed claim is secured to the extent of the value of the collateral and unsecured to the extent of any deficiency. 11 U.S.C. § 506(a). Chrysler's proof of claim asserts that it has a secured claim entitled, with interest, to a total of $15,910.45 under the plan, and an unsecured claim of $5,620.12. As previously noted, however, because the plan proposed to modify Chrysler's claim it was obligated to file a timely proof of claim for such claim to be allowed in amounts greater than the plan proposes. Since Chrysler's proof of claim is time barred, it therefore does not gain the benefit of the evidentiary effect of Rule 3001(f) and cannot contradict the debtors' valuation as entitling Chrysler to a total of $8,000. under the plan. In other words, without a timely proof of claim, Chrysler

cannot prove that it is entitled to more under the plan than the debtors propose. Its objection therefore fails. Chrysler cannot achieve indirectly what it is barred from achieving directly, i.e. allowance of a late claim under the guise of an objection to confirmation.

■ Other courts have held that a creditor whose claim has been disallowed is not a "party in interest" with standing to object to confirmation under Code section 1324. Neither the Code nor the Rules define the term "party in interest." Objecting to confirmation is a creditor's only opportunity to challenge treatment of an allowed claim under the debtor's plan. If a creditor's claim has been disallowed, however, objecting to confirmation on the grounds of such disallowance would be moot. Thus, construing the term "party in interest" narrowly, the court concludes that a creditor whose claim has been disallowed is not a party in interest if the basis for the objection to confirmation is the failure to pay a proof of claim which has been disallowed. *In re Stewart,* 46 B.R. 73 (Bankr.D.Or.1985) (holding that a creditor who fails to timely file a proof of claim does not qualify as a party in interest and therefore has no standing to object to confirmation); *In re Schapiro,* 1997 WL 367201, *4 (Bankr.E.D.Pa.1997); *In re Aronson,* 1994 WL 497541, *7 (E.D.Pa.1994); 8 COLLIER ON BANKRUPTCY, ¶ 1324.03 (rev. 15 ed.1998); *But cf. In re Linkous,* 990 F.2d 160, 163–64 (4th Cir.1993) (dissenting) (construing "party in interest" broadly); *In re B. Cohen & Sons Caterers, Inc.,* 124 B.R. 642, 645 (E.D.Pa. 1991) (holding that all creditors of the debtor are "parties in interest").

This conclusion makes it unnecessary for the court to determine if Chrysler has shown excusable neglect for a late objection to confirmation. The court does note, however, that under *Pioneer Investment v. Brunswick,* "clients must be held accountable for the acts and omissions of their attorneys." 507 U.S. at 396, 113 S.Ct. 1489. The court explicitly stated in that regard that it gave "little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date." *Id.* The court held, however, that because of an issue of ambiguity in the notice as to the bar date, excusable neglect was shown. Chrysler does not allege any ambiguity in the notice it received as to its treatment under the plan.

Notwithstanding the foregoing, this court acknowledges that if Chrysler's proof of claim had been timely, other *Pioneer Investment* factors such as prejudice to the debtor, length of the delay and its impact on judicial proceedings, and whether the creditor acted in good faith might weigh in favor of a finding of excusable neglect. However, because the proof of claim was also untimely and the court has no discretion to extend that time period under the guise of an untimely objection to confirmation, excusable neglect has not been demonstrated in this case.

■ The court notes, by contrast, that if Chrysler had raised other objections to confirmation, such as that the plan was not proposed in good faith as required by Code section 1325(a)(3), the fact that it is entitled by the plan to $8,000. might have given it sufficient standing to object on that alternative ground if there was evidence of bad faith. No such evidence has been alleged here, however. The court makes this point merely to note that a creditor who does not oppose the "cram down" amount per se should not have to file a proof of claim to have standing to object to some requirement for confirmation other than the amount it is to be paid. An untimely objection to confirmation cannot, however, be a legitimate substitute for allowance of a time-barred proof of claim.

### *CONCLUSION*

Chrysler was on notice of the "cram down" of its claim, but missed the deadline imposed by Rule 3002(c) to file a higher proof of claim than the plan proposes to allow. The debtor filed a motion objecting to Chrysler's tardily filed proof of claim. The court concludes that its claim is disallowed pursuant to section 502(b)(9). Chrysler, therefore, does not qualify as a party in interest and thus has no standing to object to confirmation of the debtor's plan on the grounds which it has asserted. Accordingly, Chrysler's cross-motion to file an objection to confirmation out of time is denied and the debtors' motion ob-

jecting to Chrysler's proof of claim and to its objection to confirmation as tardy is granted.

The court adds, however, that this opinion should not be construed as an expression of any intention of the court to raise *sua sponte* objections to tardy proofs of claim or objections to confirmation, although the court has the discretion to do so under Code section 105(a) if the circumstances of a particular case warrant it. Nothing in this case warrants a *sua sponte* objection to the plan, or to the tardy proof of claim and tardy objection to confirmation. Moreover, this opinion should not be construed by the chapter 13 trustee or debtors' attorneys as an expression of any view as to whether or when they should object to tardy claims or tardy objections to confirmation. Whether to raise such objections will presumably depend upon various factors, including perhaps whether the debtors are willing to incur any additional cost and delay resulting from litigating such objections.

The debtors are to submit an order within seven days under D.N.J.L.B.R. 9072–1(c). The hearing on confirmation of the debtors' plan, which was adjourned to a date to be determined pending the outcome of these motions, is rescheduled for March 17, 1999 at 2:00 p.m.