Nevertheless, McCutcheon argues that, because Kupersmith was aware of the frauds alleged in this case but failed to raise those objections before the entry of the Confirmation Order, Kupersmith should not be permitted to exercise this statutory right. McCutcheon relies on the case, Estate of Bright v. Ritacco (In re Ritacco) , 210 B.R. 595 (Bankr. D. Or. 1997), to support this argument. There, the bankruptcy court dismissed a similarly situated § 1330 action because the court reasoned that allowing a party to revoke confirmation based on fraud known the party before confirmation would "lead to the illogical conclusion that Congress intended *346 that creditors could lay in the weeds and wait to see if a debtor's Chapter 13 plan could gain confirmation." Id. at 598. Thus, the Ritacco Court made its decision based on its determination of Congressional intent.
While this Court sees the appeal of the Ritacco Court's interpretation, Eleventh Circuit decisions clearly prevent the Court from coming to the same conclusion here. First, the plain language of the statute is unambiguous: there is no limitation that the party seeking revocation must have the discovered the fraud after the entry of the confirmation order. The section's only limitation is that the revocation action must be filed within 180 days of a confirmation order's entry. In contrast, § 1328 only allows an interested party to revoke the entry of a discharge order based on the debtor's fraud if the party requesting revocation "did not know of such fraud until after [the] discharge was granted." 11 U.S.C. § 1328(e)(2). Had Congress intended to impose a similar limitation on the revocation of a confirmation order in § 1330, it clearly knew how to do so. See Shotz v. City of Plantation , 344 F.3d 1161, 1168 (11th Cir. 2003) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting U.S. v. Wong Kim Bo , 472 F.2d 720, 722 (5th. Cir. 1972) ).
Secondly, § 1330's predecessor, 11 U.S.C. § 671 (1978), required that the alleged fraud to be discovered "since the confirmation of the plan" to revoke a confirmation order. In amending the section by omitting that requirement and adding a requirement that the revocation action be filed 180 days after the entry of the confirmation, Congress made substantive changes to the statute. Accordingly, courts should interpret the statute according to the new language and as if Congress had intended to eliminate any prior requirements. See Kaye v. Blue Bell Creameries, Inc. (In re BFW Liquidation) , 899 F.3d 1178, 1191 (11th Cir. 2018) ("[C]hanges in statutory language generally indicate an intent to change the meaning of the statute.") (quoting Edwards v. Prime Inc. , 602 F.3d 1276, 1299 (11th Cir. 2010) ). Therefore, the Court rejects McCutcheon's res judicata and collateral estoppel arguments.
B. Standing
McCutcheon also argues that because Kupersmith's Chapter 7 trustee filed an untimely claim that this Court disallowed, Kupersmith is not "a party in interest" as required by § 1330 and accordingly, lacks standing to assert this action. The phrase "a party in interest" is not defined in the Code, though this Court, and others, have interpreted the phrase to require the party to have a "pecuniary interest" in the proceeding. See Old Republic Ins. Co. v. Farmer (In re Farmer) , 324 B.R. 918, 920 (Bankr. M.D. Ga. 2005). McCutcheon argues a party with a disallowed claim has no such interest. To support this argument, he cites a number of cases interpreting the phrase in the context of § 1324(a), which permits only "a party in interest" to object to the confirmation of the Chapter 13 plan. In those cases, the courts held that a party with a disallowed claim lacks standing to assert an objection because the party cannot receive a distribution under the Chapter 13 plan and therefore has no interest in objecting to the proposed distribution. See, e.g. , In re Larson , 245 B.R. 609, 614 n.1 (Bankr. D. Minn. 2000) ("Without an allowed claim, most courts hold that a party generally does not have the requisite pecuniary interest to be a 'party in interest.' ") (citing In re Dennis , 230 B.R. 244, 255 (Bankr. D.N.J. 1999) ;
*347 In re Stewart , 46 B.R. 73, 77 (Bankr. D. Ore. 1985) ; In re Sheppard , 173 B.R. 799, 806 (Bankr. N.D. Ga. 1994) ).
McCutcheon argues that "one can assume" the cases defining a party in interest in § 1324 can be used to define the phrase in § 1330. Some appellate decisions support McCutcheon's assumption. See Villarreal v. R.J. Reynolds Tobacco Co. , 839 F.3d 958, 963 (11th Cir. 2016) ("A word or phrase is presumed to bear the same meaning through a text[.]") (citing Antonin Scalia & Bryan A. Garner, Reading Law 170 (2012) ). But other rules of statutory interpretation are applicable as well. Most notably, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co. , 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).
The contrasting contexts in which the Code uses the phrase "a party in interests" leads this Court to conclude that a holder of a disallowed claim may have standing to assert a revocation claim, though that creditor may not have had standing to object to confirmation. As the cases McCutcheon cited explain, the only basis for opposing a Chapter 13 confirmation is to argue that the debtor's proposed distribution violates some provision of the Code. See, e.g. , In re Dennis , 230 B.R. at 255 ("Objecting to confirmation is a creditor's only opportunity to challenge treatment of an allowed claim under the debtor's plan.") Thus, it makes sense that a party whose claim-its right to receive distribution under the Chapter 13 plan-is disallowed would have no interest in opposing the distribution to other creditors with allowed claims.
A party seeking revocation of the confirmation order, like Kupersmith, is in a different position. Rather than objecting to the distribution of the Chapter 13 plan, Kupersmith is asserting that McCutcheon fraudulently misrepresented his financial condition to the Court to obtain the confirmation order. To remedy this alleged fraud, Kupersmith seeks revocation of the Confirmation Order-including the order's res judicata and collateral estoppel effect-and dismissal of the case pursuant to § 1330(b). Dismissal of the case would restore the parties to the prepetition status quo, allowing Kupersmith to assert and collect any claims against McCutcheon. See Czyzewski v. Jevic Holding Corp. , --- U.S. ----, 137 S.Ct. 973, 984, 197 L.Ed.2d 398 (2017) (noting that dismissal "aims to return [the parties] to the prepetition financial status quo.") Thus, Kupersmith is not making the futile argument that the Confirmation Order should be revoked and that McCutcheon should propose a new plan under which Kupersmith could still not receive distribution. He is arguing that the Confirmation Order should be revoked and that the Court should dismiss the case, thereby allowing Kupersmith to pursue his claim against McCutcheon without interference from a bankruptcy proceeding. Through seeking revocation of the confirmation order and dismissal of McCutcheon's Chapter 13 case, Kupersmith retains a pecuniary interest in this case and is therefore permitted to assert this action.
C. Judicial Estoppel
McCutcheon also argues that the equitable doctrine of judicial estoppel should bar Kupersmith from asserting his claims that McCutcheon stole valuable weapons and jewelry and that McCutcheon's transferred interest in Cheytac was worth tens of millions of dollars. Judicial estoppel "is intended to protect courts against parties who seek to manipulate the judicial process by changing their positions to suit the exigencies of the moment."
*348 Slater v. U.S. Steel Corp. , 871 F.3d 1174, 1176 (11th Cir. 2017). In the Eleventh Circuit, the doctrine prevents a party from making a statement that is inconsistent with another statement in a prior proceeding when the inconsistent statements (i) were made under oath and (ii) were made to "make a mockery of the judicial system." Burnes v. Pemco Aeroplex , 291 F.3d 1282, 1285 (11th Cir. 2002).
As to inconsistencies, McCutcheon directs the Court to statements Kupersmith made during the § 341(a) meetings and to the documents filed in Kupersmith's bankruptcy proceeding. Specifically, Kupersmith testified under oath that he gave firearms to Cheytac to offset liabilities that Cheytac and McCutcheon assumed. Kupersmith also stated that the weapons were worth approximately $ 100,000. Moreover, Kupersmith testified that he agreed to give McCutcheon a controlling interest in Cheytac because the company had little value given its large liabilities and pending litigation. These statements contradict many of Kupersmith's allegations in the complaint: that McCutcheon refused to return Kupersmith's weapons after agreeing to store them; that the weapons were worth over $ 500,000; that McCutcheon acted to defraud Kupersmith of his interest in Cheytac, and; that, prior to McCutcheon's divestment of his interests in the company, Cheytac was worth tens of millions of dollars. Therefore, the first element of the estoppel defense is clearly met.
Regarding the second element, McCutcheon argues that the Court should infer the statements were advertent and made to make a mockery of the judicial system because Kupersmith, by understating the value of his bankruptcy estate and thereby reducing the required dividend to unsecured creditors,[2] had a motive to conceal his assets. While prior Eleventh Circuit decisions deemed a party to have made a mockery of the judicial system because the party had a motive to conceal the assets, this fact is no longer dispositive after Slater v. U.S. Steel Corp. Rather, the inquiry is based on the specific circumstances surrounding the case. A court should consider factors such as
the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the [assets of the estate] before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the [assets of the estate] before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered.
Slater , 871 F.3d at 1185.
Kupersmith argues that the inconsistent statements he made in his prior bankruptcy proceeding were made under Stern's influence during a period in which Kupersmith was ill and was unable to comprehend his own statements. Multiple affiants offer facts to support this argument. Each notes Stern's influence on Kupersmith's finances and businesses. Each states that Stern restricted access to financial records. There is also evidence that Kupersmith was confused about the specifics *349 of his finances and relied heavily on his attorneys to provide answers at his § 341(a) meetings. Further, Kupersmith notes that he made amendments to his petition and disclosed the misrepresentations to Chorches once he understood his § 341(a) testimony and other disclosures were inaccurate.
Therefore, the Court concludes the record contains enough evidence for a reasonable fact finder to conclude Kupersmith's inconsistent statements were not made to make a mockery of the judicial system. Thus, whether the doctrine of judicial estoppel should bar Kupersmith's action remains a triable issue of fact to be determined at trial.
D. Failure to State a Claim
McCutcheon's fourth argument is substantively a motion under Federal Rule of Civil Procedure 12(b)(6).[3] McCutcheon argues that, because Kupersmith's complaint is based on his "belief" that McCutcheon misrepresented his assets and liabilities, Kupersmith's complaint fails to adequately state a claim for relief. This argument, however, fails, as the Federal Rules of Civil Procedure impose only limited requirements for a pleading party to state a claim and plausible grounds for relief. Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (noting that a complaint needs only to "give the defendant fair notice of what... the claim is and the grounds upon which it rests.") That the allegation is made only on information and belief, rather than stated definitively, is not ordinarily a basis for dismissal. See 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed. 2018) ("Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible.")
While the Eleventh Circuit has stated some exceptions to this general rule apply in fraud claims, the facts in Kupersmith's complaint are sufficiently pled to support the claim. Where a plaintiff alleges fraud, the pleading must sufficiently comply with Federal Rule of Civil Procedure 9's heightened pleading requirements. Fed. R. Bankr. P. 7009 (applying Fed R. Civ. P 9 to adversary proceedings). Those pleadings standards are not met and dismissal may be appropriate when a complaint states a claim based on information and belief but the claim is not supported by facts demonstrative of fraud. See U.S. ex rel. v. Lab. Corp. of Am. , 290 F.3d 1301, 1310-11 (11th Cir. 2002).
Here, Kupersmith's sixty paragraph complaint and attached affidavits allege many facts that, if adequately supported by evidence, could demonstrate fraud. These include allegations that McCutcheon sold valuable firearms and his interest in Cheytac but failed to disclose the proceeds of these sales. The allegations sufficiently provide a basis to support Kupersmith's claim under a heightened pleading standard.
IV. CONCLUSION
For the reasons set forth above, the Court denies the Motion. The Court concludes the defenses of res judicata, lack of *350 standing, and failure to state a claim fail as a matter of law. Accordingly, the Court dismisses those defenses as permitted by Federal Rule of Civil Procedure 56(f), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056. As to McCutcheon's judicial estoppel defense, there remains a triable issue of material fact-whether Kupersmith's inconsistent positions were made to make a mockery of the judicial system.

A Chapter 11 plan must, in the absence of acceptance, provide to a creditor at least the value the creditor would have received in a Chapter 7 liquidation. 11 U.S.C. § 1129(a)(7)(A)(ii). Accordingly if a debtor's estate has value that could be liquidated to provide a dividend to unsecured creditors, the debtor's plan must distribute to the creditor at least the hypothetical liquidation dividend to the creditor. By understating his assets then, Kupersmith could reduce his obligations under the plan.

Kupersmith contends that the 12(b)(6) claim was not asserted in McCutcheon's answer. Paragraph sixty-two, however, states "[e]ven if all [of Kupersmith's] allegations are true, the elements of fraud in a § 1330 action have not been met." This provides notice to Kupersmith that McCutcheon would assert a FRCP 12(b)(6) defense. Moreover, a 12(b)(6) defense is not waived by failing to include the defense in a responsive pleading. Fed. R. Civ. Pro. 12(h)(2).